No. 24-3286

# United States Court of Appeals for the Seventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

*v.*

MATTHEW FRAZIER,
*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana,
South Bend Division
Case No. 3:23-CR-01
The Honorable Judge Damon R. Leichty

## DEFENDANT-APPELLANT MATTHEW FRAZIER'S OPENING BRIEF AND REQUIRED SHORT APPENDIX

NORTHERN DISTRICT OF INDIANA
FEDERAL COMMUNITY DEFENDERS, INC.

2929 Carlson Drive, Suite 101
Hammond, Indiana 46323
Telephone: (219) 937-8020
Fax: (219) 937-8021
Email: jared_hamernick@fd.org

JARED E. HAMERNICK
Assistant Federal Defender

Attorney for Defendant-Appellant
Matthew Frazier

Save As Clear Form



## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-3286

Short Caption: U.S. v. Matthew J. Frazier

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Matthew J. Frazier

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Jared Hamernick N. District of IN Fed. Comm. Defenders, Inc., 2929 Carlson Dr. Ste 101, Hammond, IN 46323
David E. Vandercoy N. District of IN Fed. Comm. Defenders, Inc., 130 S. Main St. Ste 300, S. Bend, IN 46601

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and
N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

---

Attorney's Signature: s/Jared Hamernick Date: January 2, 2025

Attorney's Printed Name: Jared Hamernick

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☒ **No** ☐

Address: 2929 Carlson Drive, Suite 101
Hammond, IN 46323

Phone Number: 219-937-8020 Fax Number: 219-937-8021

E-Mail Address: Jared_Hamernick@fd.org

rev. 12/19 AK

**TABLE OF CONTENTS**

**PAGE**


Appearance & Circuit Rule 26.1 Disclosure Statement ........................................... i

Table of Contents ........................................................................................ ii

Table of Authorities ..................................................................................... v

Introduction ................................................................................................ 1

Jurisdictional Statement ............................................................................... 3

Statement of the Issues ................................................................................ 4

I. Matthew Frazier has a long and well-documented history of competency problems—including a prior state-court finding of incompetency. Though he told the district judge that he was seeing dead people in the courtroom who were telling him to harm others, the case proceeded in the normal course. Was there "reasonable cause" to initiate competency proceedings *sua sponte*? ............................................................................ 4

II. Mr. Frazier has received social security disability benefits since 2001 and cannot work because of his mental illnesses. At sentencing, the district court repeatedly said that Mr. Frazier was unable to work after his release because of his disabilities. Did the district court plainly err by imposing a condition of supervised release that requires Mr. Frazier to obtain full-time employment? ........................ 4

Statement of the Case .................................................................................. 5

I. Matthew Frazier's lifelong struggle with mental illnesses ........................ 5

II. Mr. Frazier's competency is an immediate concern in this case ................ 7

A. Mr. Frazier's competency evaluation results ..... 7

B. Mr. Frazier tries unsuccessfully to plead guilty ..... 8

C. At a hearing about waiving his right to a jury trial, Mr. Frazier tells the court that he sees dead people in the courtroom who are telling him to hurt people. ..... 9

D. Mr. Frazier is convicted at a one-day bench trial ..... 13

E. The District Court sentences Mr. Frazier to the statutory minimum 10-year term of imprisonment ..... 14

Summary of the Argument ..... 17

Argument ..... 18

I. The district court erred by failing to ensure that Mr. Frazier was competent after he reported seeing a hundred dead people in the courtroom who were telling him to hurt people ..... 18

A. District courts have a legal duty to ensure that defendants are competent during criminal proceedings ..... 18

B. Mr. Frazier's words and conduct in open court on April 9, 2024, objectively manifested "reasonable cause" to inquire into his mental capacity to continue on in the criminal proceedings. ..... 20

II. The district court erred by imposing a condition of supervised release that the court recognized that Mr. Frazier cannot fulfill ..... 26

A. The Standard of Review ..... 26

B. The employment requirement is not an appropriately tailored condition of supervised release because Mr. Frazier cannot work ........ 28

C. The error here is plain and affects Mr. Frazier's substantial rights, so this Court should exercise its discretion to correct the issue ........ 30

Conclusion ........ 33

Certificate of Compliance ........ 35

Certificate of Service ........ 36

**TABLE OF AUTHORITIES**

**CASES** **PAGE**

*Anderson v. United States*,
865 F.3d 914 (7th Cir. 2017) .......... 18

*Burt v. Uchtman*,
422 F.3d 557 (7th Cir. 2005) .......... 24

*Cooper v. Oklahoma*,
517 U.S. 348 (1996) .......... 18

*Drope v. Missouri*,
420 U.S. 162 (1975) .......... 18

*Dusky v. United States*,
362 U.S. 402 (1960) .......... 18

*McDonnell v. United States*,
579 U.S. 550 (2016) .......... 26

*McManus v. Neal*,
779 F.3d 634 (7th Cir. 2015) .......... 24

*Medina v. California*,
505 U.S. 437 (1992) .......... 18

*Newman v. Harrington*,
726 F.3d 921 (7th Cir. 2013) .......... 23

*Pate v. Robinson*,
383 U.S. 375 (1966) .......... 18

*Rosales-Mireles v. United States*,
585 U.S. 129 (2018) .......... 32

*Sena v. N.M State Prison*,
109 F.3d 652 (10th Cir. 1997) .................................................................... 21

*Timberlake v. Davis*,
409 F.3d 819 (7th Cir. 2005) ...................................................................... 19

*United States v. Adkins*,
743 F.3d 176 (7th Cir. 2014) ...................................................................... 28

*United States v. Baker*,
755 F.3d 515 (7th Cir. 2014) ........................................................ 30, 31, 33

*United States v. Collins*,
949 F.2d 921 (7th Cir. 1991) ........................................................ 20, 21, 25

*United States v. Dreyer*,
705 F.3d 951 (9th Cir. 2013) ...................................................................... 22

*United States v. Gibbs*,
--- F.4th ---, 2025 WL 747499 (7th Cir. Mar. 10, 2025) .................................. 27

*United States v. Goodwin*,
717 F.3d 511 (7th Cir. 2013) ...................................................................... 28

*United States v. Graves*,
98 F.3d 258 (7th Cir. 1996) ........................................................................ 23

*United States v. Hill*,
818 F.3d 342 (7th Cir. 2016) ............................................................... 29, 33

*United States v. Kappes*,
782 F.3d 828 (7th Cir. 2015) .......................................................... *passim*

*United States v. Lee*,
950 F.3d 439 (7th Cir. 2020) ...................................................................... 31

*United States v. Moose*,
893 F.3d 951 (7th Cir. 2018) .................................................. 29, 30, 33

*United States v. Morgan*,
987 F.3d 627 (7th Cir. 2021) .................................................. 29

*United States v. Olano*,
507 U.S. 725 (1993) .................................................. 31

*United States v. Ruston*,
565 F.3d 892 (5th Cir. 2009) .................................................. 20, 21, 22

*United States v. Stoller*,
827 F.3d 591 (7th Cir. 2016) .................................................. 25

*United States v. Truett*,
109 F.4th 996 (7th Cir. 2024) .................................................. 18

*United States v. Wingo*,
789 F.3d 1226 (11th Cir. 2015) .................................................. 19, 25

*United States v. Woodard*,
744 F.3d 488 (7th Cir. 2014) .................................................. 25

*Yang v. United States*,
114 F.4th 899 (7th Cir. 2024) .................................................. 19, 20, 21

**STATUTES**

18 U.S.C. § 2252(a)(4)(B) .................................................. 3

18 U.S.C. § 2252A(a)(5)(B) .................................................. 3

18 U.S.C. § 3231 .................................................. 3

18 U.S.C. § 3583(d) .................................................. 28

18 U.S.C. § 3583(e)(2) .................... 30

18 U.S.C. § 3583(k) .................... 28

18 U.S.C. § 3742 .................... 3

18 U.S.C. § 4241 .................... 19

18 U.S.C. § 4241(a) .................... 2, 7

28 U.S.C. § 1291 .................... 3

28 U.S.C. § 2106 .................... 30, 32

Ind. Code §§ 35-42-4-4(c)(2).................... 6

Ind. Code §§ 35-42-4-4(e)(2) .................... 6

**OTHER AUTHORITIES**

FED. R. CRIM. P. 52(b) .................... 31

U.S.S.G. § 5B1.3(c)(7) .................... 29

## Introduction

> **Matthew Frazier:** "I still see and hear things that aren't there."
>
> **The Court:** "All right. Let me ask this. As you sit there now, are you seeing or hearing anything other than the sound of my voice?"
>
> **Mr. Frazier:** "Yes, a lot of others. … A hundred."
>
> **The Court:** "And what sort of voices or things do you hear people saying to you?"
>
> **Mr. Frazier:** "Trying to get me to do bad things."
>
> **The Court:** "And what sort of bad things are they saying that they would like you to do?"
>
> **Mr. Frazier:** "Hurt people."
>
> **The Court:** "Are those things that you're hearing other people say, other than my own voice, are they interfering with your ability to hear or understand what I'm saying to you?"
>
> **Mr. Frazier:** "At times, yes."

After having that conversation with Mr. Frazier, the district court found him competent to waive his right to a jury trial. At a bench trial, Mr. Frazier was convicted of knowingly possessing child pornography.

But that alarming dialogue should have brought everything to a screeching halt. When a person sees a hundred phantoms in the courtroom and hears them tell him to hurt people, "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him

mentally incompetent." 18 U.S.C. § 4241(a). That colloquy triggered the district court's *sua sponte* obligation to inquire further to determine whether an incompetent man was about to be sent to federal prison for a decade. *Id.*

This Court should vacate Mr. Frazier's conviction and remand for further competency proceedings.

At a minimum, the Court should order a limited remand to address a condition of Mr. Frazier's supervised release. Despite acknowledging that "the unfortunate reality is [Mr. Frazier] can't work because of [his] ongoing disability," the court imposed an exceptionless requirement that he obtain full-time employment upon his release from prison. That condition is unsupported by the record and cannot stand.

## Jurisdictional Statement[1]

**I.** This is a direct appeal in a criminal case following a bench trial. (R. 83.) The jurisdiction of the United States District Court for the Northern District of Indiana was based on 18 U.S.C. § 3231.

**A.** On January 11, 2023, a grand jury sitting in that district charged Matthew Frazier by indictment with one count of knowingly possessing material containing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). (R. 1).

**B.** On June 26, 2024, a grand jury sitting in that district charged Mr. Frazier by superseding indictment with knowingly possessing material that contained an image of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(2). The superseding indictment also alleged that Mr. Frazier had a prior conviction that would increase his sentencing exposure under the statute. (R. 68.)

**II.** The jurisdiction of the United States Court of Appeals for the Seventh Circuit is based on 28 U.S.C. § 1291 and 18 U.S.C. § 3742, because:

**A.** The district court sentenced Mr. Frazier on December 12, 2024 (R. 97);

**B.** Final judgment was entered the same day (R. 101);

**C.** Mr. Frazier timely filed a notice of appeal on December 18, 2024 (R. 112);

**D.** Neither party filed a motion that would affect the timeliness of this appeal; and

**E.** This is not an appeal from a final decision by a magistrate judge.

[1] This brief uses the following abbreviations: The electronic record on appeal is (R. #, at __.) The short appendix is (A., at __.) The Presentence Investigation Report is (PSR ¶ __.)

## Statement of the Issues

**I.** Matthew Frazier has a long and well-documented history of competency problems—including a prior state-court finding of incompetency. Though he told the district judge that he was seeing dead people in the courtroom who were telling him to harm others, the case proceeded in the normal course.

Was there "reasonable cause" to initiate competency proceedings *sua sponte*?

**II.** Mr. Frazier has received social security disability benefits since 2001 and cannot work because of his mental illnesses. At sentencing, the district court repeatedly said that Mr. Frazier was unable to work after his release because of his disabilities.

Did the district court plainly err by imposing a condition of supervised release that requires Mr. Frazier to obtain full-time employment?

## Statement of the Case

### I. Matthew Frazier's lifelong struggle with mental illnesses.

As a child growing up in New Buffalo, Michigan, Matthew Frazier was physically abused by his father on a weekly basis. (PSR ¶ 54.) At eight years' old, he was forcibly sexually assaulted by a stranger behind a bowling alley. (*Id.* ¶ 55.) Matthew's childhood abuse ended only when his father killed himself in 1985. (*Id.* ¶ 56; R. 99, Sent. Mem., at 2–3.)

The physical abuse ended with his father's suicide, but Matthew's lifelong battle with mental illness had only just begun. He was placed in special education in school and graduated with a 1.6 grade point average. (PSR ¶ 69.) He has long struggled with depression, attempting suicide multiple times since the 1990s. (*Id.* ¶ 62.) He has been receiving Social Security disability benefits since 2001. (*Id.* ¶¶ 70, 72; *see also* R. 93, Def.'s Sent. Mem., at 3.)

In July 2019, Mr. Frazier was charged in Indiana state court with possessing child pornography. (PSR ¶ 43.) In December, the state court determined that Mr. Frazier lacked the mental capacity to stand trial. (R. 12-1, Ex. A, Order.) That order was based on a forensic evaluation that concluded that Mr. Frazier "currently does not have a rational or factual understanding of the

process and [cannot] in his present capacity assist his attorney in his defense." (R. 93-1, Ex. A., at 1.) Mr. Frazier was eventually restored to competency and pled guilty on two counts. *See* Ind. Code §§ 35-42-4-4(c)(2), (e)(2). (R. 92-1, Ex. 1, at 3.)

In May 2022, Mr. Frazier underwent another forensic assessment and reported "a history of depression with numerous hospitalizations." (PSR ¶ 64.) In one incident, he was contemplating suicide but called his probation officer instead. (*Id.*) He was then hospitalized and diagnosed as having "Major Depressive Disorder, recurrent, severe" and "Post-Traumatic Stress Disorder." (*Id.*) During the forensic assessment, he reported psychosis as well as seeing and hearing dead people talking to him. (*Id.*)

When that assessment ended, Mr. Frazier was diagnosed with (1) Bipolar I Disorder, without psychotic features, and (2) Schizoaffective Disorder, Bipolar type-Rule out/provisional. (*Id.* ¶ 65). He was prescribed five medications at the time: Lexapro, Trazodone, Invega, Seroquel, and Saphris. (*Id.*) The latter three medications are all antipsychotic medications used to treat schizophrenia and bipolar disorder.[2]

---

[2] Invega is a brand name for Paliperidone, a drug used to treat symptoms of psychotic disorders, including schizophrenia. *See* Paliperidone, MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/paliperidone-intramuscular-route/description/drg-20073158; Seroquel is the brand name for Quetiapine, a drug used to treat

## II. Mr. Frazier's competency is an immediate concern in this case.

As soon as Mr. Frazier was charged in this case, his competence was a concern. (*E.g.*, R. 7, at 2, 4.) His attorney sought a competency evaluation and hearing under 18 U.S.C. § 4241(a). (R. 12.) The district court granted the motion in light of Mr. Frazier's previous incompetency finding, disability determination, and mental health history. (R. 108, Motion Hr'g. Tr., at 2–3, 6–7.)

### A. Mr. Frazier's competency evaluation results.

As a result, Mr. Frazier was transferred to the Metropolitan Correctional Center in Chicago for an evaluation. (R. 20, Psychiatric Rep. R., at 7.) He reported experiencing ongoing auditory and visual hallucinations involving dead people, but he denied that they told him to do anything. (*Id.*) He also estimated that he had been hospitalized for mental health issues at least 10 times and reported being prescribed various psychotropic medications. (*Id.* at 5.)

The evaluation explained that "[b]ased on his self-report, Mr. Frazier has been diagnosed with Schizophrenia, Major Depressive Disorder, and a 'mild' Intellectual Disability" and had "symptoms including auditory and visual

---

schizophrenia and bipolar disorder. *See* Quetiapine, MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/quetiapine-oral-route/description/drg-20066912; Saphris is the brand name for Asenapine, a drug used to treat schizophrenia. *See* Asenapine, MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/asenapine-sublingual-route/description/drg-20073429 (last visited March 5, 2025).

hallucinations, depression, hopelessness, fatigue[], anxiety, suicidal ideation, and 'trouble memorizing things.'" (*Id.* at 11.) The examiner noted that he experienced these "symptoms to varying degrees on an ongoing basis, [but] they appear to be adequately managed with psychotropic medication at this time." (*Id.* at 12.)

The examiner noted that "[i]f further evidence emerges indicating he is experiencing psychotic features during major depressive episodes, this is indicative of a poorer prognosis." (*Id.*) Even so, Frazier's "symptoms have resulted in impairment in functioning in several areas of his life, yet he is currently psychiatrically stable" and thus, in the examiner's view, he was competent to stand trial at that time. (*Id.* at 16.)

Based on that evaluation, the district court concluded that Mr. Frazier was competent to stand trial in June 2023. (R. 109, Hr'g Tr., at 3.) The court relied on the forensic evaluation as "the only evidence we have." (*Id.*) Although "there have been times in Mr. Frazier's life where he was not competent to stand trial … we are not at such a place now." (*Id.*)

**B. Mr. Frazier tries unsuccessfully to plead guilty.**

At a change of plea hearing in early 2024, Mr. Frazier confirmed that he was still taking antipsychotic medications (Seroquel, Invega, and Asenapine) for his mental health conditions. (R. 46, Plea Tr. at 5–6.) The court asked defense

counsel whether there was "any concern about Mr. Frazier's competency today." (*Id.* at 6–8.) Defense counsel reported serious concern but said that Mr. Frazier was in roughly the same condition as he was when evaluated a year before. (*Id.* at 8–9.) The government said it had no competency concerns. (*Id.* at 9.)

The court then engaged Mr. Frazier in a traditional plea colloquy. (*Id.* at 9–14.) After reviewing the elements of the offense, the court let defense counsel question Mr. Frazier to establish a factual basis for the plea. (*Id.* at 18–19.) Mr. Frazier said that he didn't know there was child pornography on his iPad; instead, he was pleading guilty because he was "going by what [he] was told by the marshals." (*Id.* at 20.) He said that he was not aware that there were images of child pornography on his iPad and that he had only sent one image to someone named "Roper FBI" in an online chatroom. (*Id.* at 24–25.) As a result, the factual basis of the plea was insufficient to establish knowing possession of child pornography, and the court did not accept the plea. (*Id.* at 25.)

### C. At a hearing about waiving his right to a jury trial, Mr. Frazier tells the court that he sees dead people in the courtroom who are telling him to hurt people.

On April 9, 2024, Mr. Frazier was in court to discuss waiving his right to a jury trial. (R. 110, Hr'g Tr., at 2; A. at 2.) At the outset, the district court began by seeking to ensure that Mr. Frazier was making "a knowing and voluntary waiver

of that right." (*Id.* at 4.) The court asked Mr. Frazier about his mental health conditions, and Mr. Frazier responded that "I hear things and see things. I have schizophrenia. It's still not changed sir." (*Id.* at 4–5.) He then explained the psychotropic medications he was taking. (*Id.* at 5–7.) When asked whether the medication was working, Mr. Frazier said "I don't think it's working because I still see and hear things that aren't there." (*Id.* at 7–8.)

The court followed up, and this conversation ensued:

| | |
|---|---|
| The Court | All right. Let me ask this. As you sit there now, are you seeing or hearing anything other than the sound of my voice? |
| **Mr. Frazier** | Yes. |
| The Court | And what are you seeing or hearing as it stands now? |
| **Mr. Frazier** | Well, seeing people that have passed away. Hearing, that's him trying to tell me to do bad things. |
| The Court | Do you see -- who do you see in the courtroom now? |
| **Mr. Frazier** | A lot of people. |
| The Court | All right. Do you see Mr. Vandercoy? |
| **Mr. Frazier** | Yes. |
| The Court | Do you see me? |
| **Mr. Frazier** | Yes. |
| The Court | Do you see the court reporter here at the bench to my left? |
| **Mr. Frazier** | Yes, sir. |
| The Court | Do you see Mr. Maciejczyk and Ms. Jones? |
| **Mr. Frazier** | Yes, sir. |
| The Court | Do you see the marshals that are seated behind you? |

| | |
|---|---|
| **Mr. Frazier** | Yes. |
| The Court | Okay. Do you see the court security officer here in the corner? |
| **Mr. Frazier** | Yes. |
| The Court | Do you see the three staff members along this desk? |
| **Mr. Frazier** | Yes. |
| The Court | And do you see the woman seated out in the gallery? |
| **Mr. Frazier** | Yes. |
| The Court | Are there other people other than those individuals who you see this afternoon? |
| **Mr. Frazier** | Yes, a lot of others. |
| The Court | Okay. How many others do you see right now? |
| **Mr. Frazier** | I can't count them all. |
| The Court | Can you give me an estimate of how many people you see? |
| **Mr. Frazier** | I don't know. A hundred. |
| The Court | And where are they here in the courtroom? |
| **Mr. Frazier** | Just all out and about. |
| The Court | Are there individuals you see here right in front of the bench, in the well of the courtroom? |
| **Mr. Frazier** | Yes. |
| The Court | Do you see any other people seated out in the gallery at all? |
| **Mr. Frazier** | Yes. |
| The Court | Do you see anybody seated here in the jury box? |
| **Mr. Frazier** | Yes. |
| The Court | Do you see any people behind me? |
| **Mr. Frazier** | Yes. |
| The Court | And what sort of voices or things do you hear people saying to you? |

| | |
|---|---|
| **Mr. Frazier** | Trying to get me to do bad things. |
| The Court | And what sort of bad things are they saying that they would like you to do? |
| **Mr. Frazier** | Hurt people. |
| The Court | Are those things that you're hearing other people say, other than my own voice, are they interfering with your ability to hear or understand what I'm saying to you? |
| **Mr. Frazier** | At times, yes. |
| The Court | Are you able to block out or put those voices aside and focus only on what I'm saying to you, Mr. Frazier? |
| **Mr. Frazier** | I'm trying. |
| The Court | All right. In the course of this hearing, I want you to only focus on what I'm saying to you. All right, sir? |
| **Mr. Frazier** | Yes, sir. |
| The Court | If for any reason there's something that interferes with what I'm saying to you, just ask me to restate what I'm asking or saying to you, and I'll try to explain it better. All right, sir? |
| **Mr. Frazier** | Yes, sir. |
| The Court | Okay. Mr. Frazier, when you were taking Seroquel, did that reduce or eliminate the voices that you hear or the people that you see here in this courtroom? |
| **Mr. Frazier** | No. |

(R. 109, at 8–12.) Instead of addressing Mr. Frazier's hallucinations, the court asked whether "other than hearing voices … are you experiencing any other dynamics, conditions, at this point, as you sit there now … that [affect] your ability to understand what I'm saying to you?" (*Id.* at 12.) Mr. Frazier said there was nothing else that hindered his ability to understand what was going on. (*Id.*)

The court turned to defense counsel and asked whether "you have any doubt in your mind as to whether Mr. Frazier is waiving his right to a jury trial in a knowing and voluntary way?" (*Id.* at 16.) Defense counsel replied:

> Yes. I can report that I believe his decision-making is at about the same level as when he was returned from the MCC and determined to be competent. He does have issues understanding our communications on a long-term basis. … I always have reservations about the quality of his decision-making given his background. … I have reservations, but I believe he does understand what he's doing today.

(*Id.* at 16–17.) The government asserted that Mr. Frazier was competent based on the evaluation at the MCC. (*Id.* at 20.)

The court explained that it had read the forensic report and noted that "the report is dated April 11 of 2023, so we're just past a year on that report." (*Id.* at 21.) Even so, the court concluded that Mr. Frazier's "waiver is knowing and voluntary" "given the course of the questioning and responses and … the forensic evaluation of just a year ago." (*Id.* at 25–26.)

**D. Mr. Frazier is convicted at a one-day bench trial.**

Given the parties' pretrial stipulations, there were just three disputed elements at trial. *First*, whether Mr. Frazier knowingly possessed the material. *Second*, whether he knew it depicted a minor engaged in sexually explicit conduct. *Third*, whether he had a prior conviction that increased the mandatory

minimum sentence. (R. 112, Bench Trial Tr., at 5–6.) Ultimately, the court ruled that the answer to each question was yes. (*Id.* at 159–67.)

At the same time, the court noted Mr. Frazier's unusually suggestible state. (*Id.* at 162.) He had forwarded an image of child pornography to a stranger named "Roper FBI" on Telegram (an online messaging platform) because he thought he was reporting child exploitation to law enforcement. (*Id.* at 162.) The person behind the Roper FBI account was an obvious online scam artist. (*Id.* at 150–51, 162). But Mr. Frazier had given all of his banking information to Roper FBI based on a ruse that Mr. Frazier had won a Facebook lottery, and Roper FBI would secure Mr. Frazier's accounts. (*Id.*; *see also id.* at 15, 54–58, 150–51.) Despite the obviousness of the fraud, the court found that "Mr. Frazier … seemed to believe that Roper FBI was, in fact, a law enforcement officer." (*Id.* at 162.)

**E. The District Court sentences Mr. Frazier to the statutory minimum 10-year term of imprisonment.**

At sentencing, the court adopted the PSR's uncontested Guidelines calculation of 120 months' imprisonment (increased from a range of 78 to 97 months by the statutory minimum). (R. 113, Sent. Tr., at 6; A. at 40.) Both parties recommended a 120-month sentence in light of Mr. Frazier's lengthy history of abuse and mental illness. (A. at 41–46.)

That's the sentence the court imposed. (*Id.* at 52.) The court noted that "abuse begets abuse" and this case was "no exception in that regard." (*Id.* at 48.) That abuse left Mr. Frazier "scarred with mental health needs," that had "deeper roots" and manifested in "[y]our psychosis, your mental health challenges." (*Id.* at 49.) The court noted that he "experiences auditory, visual hallucinations, and wrestles daily, really, with many types of conditions." (*Id.*)

The court also explained that "the unfortunate reality is you can't work because of your ongoing disability, and that has existed for some time, since about 2001." (*Id.* at 51–52.) In a written order that tracks the sentencing hearing transcript, the court noted that "Mr. Frazier cannot work due to his disability (since about 2001)." (R. 99, Sent. Mem., at 3.)

After imposing the 120-month prison term, the district court moved on to supervised release. The court concluded that "a term of 7 years is appropriate" and that "[y]our supervision will be governed by the recommended conditions for the reasons that are stated in" the PSR. (*Id.* at 18.) The district court declined to impose financial assessments because of "your disability, your reliance on social security income" and "your disability means you don't have an earning capability that would support an imposition of that assessment." (*Id.* at 19.) The

court said that it had "reviewed the conditions that were attached to the revised presentence report" and they were "all appropriate in your case." (*Id.* at 20.)

Relevant to this appeal, condition five provides that:

> You must be lawfully employed full-time (at least 30 hours per week). If you are not employed full-time, you must try to find full-time employment under the supervision of the probation officer. If you become unemployed, or change your employer, position, or location of employment, you must tell the probation officer within 72 hours of the change. If after 90 days you do not find employment, you must complete at least 10 hours of community service per week until employed or participate in a job skills training program approved and directed by your probation officer.

(R. 101, J., at 4; A., at 61.) After confirming that the court had addressed all the arguments, the court imposed a sentence of 120 months' imprisonment and seven years' supervised release under the terms set out in the PSR. (A., at 55–56.)

## Summary of the Argument

The right to be tried while competent is a bedrock constitutional principle. For many, competency isn't static. In Mr. Frazier's case, his competency exists in fleeting spurts. He had been deemed competent early in these proceedings. But his statements a year later in open court that he was seeing phantoms who were telling him to injure others should have been a flashing red light. Instead, they were brushed aside. The district court should have put everything on hold to ensure that an incompetent man was not about to be put to trial and exposed to a minimum of a decade in federal prison.

Mr. Frazier cannot work because of his mental disabilities. He has received social security disability benefits since 2001 because of his mental illnesses. The court recognized as much at sentencing, explaining that "Mr. Frazier cannot work due to his disability." (R. 99, at 3.). Inexplicably, the court ordered him to obtain full-time employment while on supervised release. That condition apparently slipped through the cracks, but it must be deleted or modified to account for Mr. Frazier's inability to obtain such employment.

## Argument

### I. The district court erred by failing to ensure that Mr. Frazier was competent after he reported seeing a hundred dead people in the courtroom who were telling him to hurt people.

This Court reviews for an abuse of discretion the district court's failure to hold a competency hearing *sua sponte*. *United States v. Truett*, 109 F.4th 996, 1000 (7th Cir. 2024). Criminal defendants cannot waive competency concerns. *Pate v. Robinson*, 383 U.S. 375, 384 (1966).

#### A. District courts have a legal duty to ensure that defendants are competent during criminal proceedings.

The due process right to a fair trial "prohibits the trial of a defendant who lacks mental competence." *Anderson v. United States*, 865 F.3d 914, 919 (7th Cir. 2017) (citing *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975)). The Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Medina v. California*, 505 U.S. 437, 453 (1992), and collecting cases). In *Dusky v. United States*, the Supreme Court set out the applicable test: the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" plus "a rational as well as factual understanding of the proceedings against him." 362 U.S. 402, 402 (1960).

Congress codified that test at 18 U.S.C. § 4241, and there obliged the district court itself to order competency proceedings in appropriate cases:

> The court … shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

*Id.* § 4241(a). The statute's plain language requires the court to order *sua sponte* a competency hearing if there is "reasonable cause" to believe that the defendant "may" be incompetent. *United States v. Wingo*, 789 F.3d 1226, 1236 (11th Cir. 2015); *see Timberlake v. Davis*, 409 F.3d 819, 822 (7th Cir. 2005) ("[T]he due process clause requires the trial judge to inquire *sua sponte* into a defendant's mental state, if events in court imply that the accused may be unable to appreciate the nature of the charges or assist his counsel in presenting a defense.").

Note, too, that the court's duty to ensure competency "safeguards fairness throughout criminal proceedings," not just at trial. *Yang v. United States*, 114 F.4th 899, 907 (7th Cir. 2024). District courts must be on the lookout for a defendant's deteriorating mental capacity during the proceedings because competency is not static. "[A] defendant may flit in-and-out of competency, [so] 'a trial court must always be alert to circumstances suggesting a change that would render the

accused unable to meet the standards of competency to stand trial.'" *Yang*, 114 F.4th at 906–07 (quoting *Drope*, 420 U.S. at 181).

The court's *sua sponte* obligation to ensure competency hinges on "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." § 4241(a). To trigger that obligation, "there must be some manifestation, some conduct, on the defendant's part to trigger a reasonable doubt of his competency." *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991). The "test is objective, and depends not on what the judge had in mind but on the facts before him." *Id.*

### B. Mr. Frazier's words and conduct in open court on April 9, 2024, objectively manifested "reasonable cause" to inquire into his mental capacity to continue on in the criminal proceedings.

The district court abused its discretion when it passed over Mr. Frazier's statements that he was seeing dead people in the courtroom who were telling him to hurt others. The full range of evidence before the court underscores the need for an updated competency evaluation and hearing.

Seeing dead people in the courtroom suggests "a severe psychotic disorder," and "should have alerted the court to the possibility of a competence issue." *Anderson*, 865 F.3d at 920; *United States v. Ruston*, 565 F.3d 892, 903–04 (5th Cir. 2009) (holding that the court abused its discretion by failing to hold a

*sua sponte* competency hearing after observing "erratic behavior" in the courtroom by a schizophrenic defendant). Hearing those ghosts tell you to hurt others only escalates the threat of present incompetence. *See Anderson*, 865 F.3d at 920. Mr. Frazier's statements that he was seeing and hearing violent phantoms in the courtroom was sufficient "to trigger a reasonable doubt of his competency." *Collins*, 949 F.2d at 924; *Ruston*, 565 F.3d at 903.

But of course, this was not the only indication of Mr. Frazier's contemporaneous incompetence. Mr. Frazier had a history of "flit[ting] in-and-out of competency," *Yang*, 114 F.4th at 906, which should have put the district court on "alert to circumstances suggesting a change that would render [Mr. Frazier] unable to meet the standards of competency to stand trial," *Drope*, 420 U.S. at 181. The court knew that Mr. Frazier had previously been deemed incompetent, only to be restored to competency later on. *See Ruston*, 565 F.3d at 903–04 (finding previous incompetency relevant to need for present competency hearing); *Sena v. N.M State Prison*, 109 F.3d 652, 655 (10th Cir. 1997) (same). That sort of on-again, off-again competency concern was latent in this case and should have been brought to the fore by Mr. Frazier's violent hallucinations. *Collins*, 949 F.2d at 924.

The medical examination in this case also should have alerted the court to the fleeting nature of Mr. Frazier's competence. *United States v. Dreyer*, 705 F.3d 951, 964 (9th Cir. 2013) (finding plain error in failing to order a competency hearing *sua sponte* despite some medical evidence opining the defendant was competent). Recall, the report found that Mr. Frazier was "currently" competent because his symptoms were managed by medication. (R. 20, at 12, 16.) But the report specifically noted that "[i]f further evidence emerges indicating he is experiencing psychotic feature during major depressive episodes, this is indicative of a poorer prognosis." (*Id.* at 13.)

Those two qualifiers are important here. Mr. Frazier reported that his psychotropic medications were no longer working as of April 9, 2024. And further evidence emerged that he was experiencing psychotic features: he said he was seeing dead people who told him to hurt others—an obvious escalation from his forensic evaluation where "[h]e denied the voices instruct him to do anything (i.e., "they just say 'hi.'")." (*Id.* at 4.) The record evidence here of Mr. Frazier's unstable competency plus his abnormal courtroom behavior required the court to revisit Mr. Frazier's competence to stand trial. *Anderson*, 865 F.3d at 920; *Ruston*, 565 F.3d at 903–04; *Dreyer*, 705 F.3d at 963–64. The court abused its

discretion by relying on the report's year-old, bottom-line finding of competency while overlooking the contingent nature of that finding.

The district court's apparent efforts to rehabilitate Mr. Frazier's competence did not spare the need to investigate Mr. Frazier's competence. *United States v. Graves*, 98 F.3d 258, 261 (7th Cir. 1996) ("[I]f, after that preliminary inquiry, reasonable cause to believe the defendant incompetent persisted, an evidentiary hearing became mandatory."). For one, "[a] person grappling with a serious mental illness or under the influence of psychotropic drugs cannot be assumed to have a reliable understanding of his faculties." *Anderson*, 865 F.3d at 920. Anyway, the court should have been skeptical of Mr. Frazier's responses (typically little more than "yes" or "no") given that he "acknowledged some *inability* to think clearly and participate in the proceedings." *Id.*; *see also Newman v. Harrington*, 726 F.3d 921, 931 (7th Cir. 2013) (holding that simple "yes" or "no" answers to a judge's questions are insufficient to establish competence).

Recall, Mr. Frazier confirmed that the voices were "interfering with [his] ability to hear or understand" the court. (A., at 10.) That's a serious problem, *Anderson*, 865 F.3d at 920, and his responses must be framed by his incredible suggestibility. Mr. Frazier had blindly gone along with an unsophisticated social

media scam and handed over all of his banking information to a complete stranger. That he was agreeable with a federal judge is poor evidence of his competence and did not undercut the court's duty to inquire further.

Mr. Frazier was on a range of psychotropic medications that had changed and were ineffective. That should have put the court on high alert. *Anderson*, 865 F.3d at 920. As in *McManus v. Neal*, 779 F.3d 634, 656 (7th Cir. 2015), the district court knew that Mr. Frazier was taking powerful "mind-altering" drugs that had recently changed.[3] (A., at 5.) Those facts "create[] substantial doubt about" Mr. Frazier's competence. *Id.* Worse, the court "lacked a full picture." *Anderson*, 865 F.3d at 920; *Burt v. Uchtman*, 422 F.3d 557, 565–66 (7th Cir. 2005). The need to establish Mr. Frazier's competency was particularly acute once he indicated that (1) the drugs weren't keeping the apparitions at bay, and (2) the hallucinations were interfering with his ability to comprehend the proceedings. *Anderson*, 865 F.3d at 920; *Burt*, 422 F.3d at 566.

It is irrelevant that the court confirmed that Mr. Frazier was not experiencing "other" symptoms too. (*Id.* at 11.) It is no salve that his ability to

---

[3] His medication had changed from Seroquel to Zyprexa. Zyprexa (the brand name for olanzapine) is another powerful psychotropic medication used to treat schizophrenia and bipolar disorder. *See* Olanzapine Tablets, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/drugs/18192-olanzapine-tablets (last visited March 7, 2025).

understand the court was only hindered by seeing dead people and hearing their voices. *Sena*, 109 F.3d at 655 ("[O]nce doubt is raised, the court cannot dispel it simply by relying on contrary evidence."). The "reasonable cause" standard does not require a cornucopia of psychotic features, just "some manifestation, some conduct … to trigger a reasonable doubt of his competency." *Collins*, 949 F.2d at 924. Once there is reason to have "a bona fide doubt" about the defendant's competence, "[f]ailing to *sua sponte* hold a competency hearing violates due process." *United States v. Stoller*, 827 F.3d 591, 596 (7th Cir. 2016) (quoting *United States v. Woodard*, 744 F.3d 488, 493 (7th Cir. 2014)).

To be sure, though defense counsel repeatedly voiced concern about Mr. Frazier's competence, defense counsel didn't renew the motion for a competency hearing. But that "cannot be conclusive evidence that competency is not in doubt. If it were, the mandatory requirement in § 4241 for a court to *sua sponte* address the issue of a defendant's competency would be meaningless …." *Wingo*, 789 F.3d at 1238. If the district court's *sua sponte* obligation under the statute is made contingent (either in practice or in actuality) on defense counsel's actions, then the court's obligation is illusory, and the statutory text is superfluous. *Id.* That result would fly in the teeth of the presumption against making statutory

language superfluous. *E.g.*, *McDonnell v. United States*, 579 U.S. 550, 569 (2016). The evidence before the court—especially the court-initiated conversation about phantoms in the courtroom—triggered the court's mandatory duty under § 4241 to initiate competency proceedings on its own. The proceedings should have ground to a halt and the court should have ordered additional proceedings to determine Mr. Frazier's competence. Because it did not, this Court should reverse and remand for a competency hearing.

## II. The district court erred by imposing a condition of supervised release that the court recognized that Mr. Frazier cannot fulfill.

Mr. Frazier has been disabled and unable to work for nearly the entire twenty-first century. The district court repeatedly recognized that he was unable to work because of his disability. Even so, Mr. Frazier's conditions of supervised release require him to obtain full-time employment. This Court should order a limited remand to address the supervised release issue. *United States v. Kappes*, 782 F.3d 828, 866 (7th Cir. 2015).

### A. The Standard of Review

This Court generally reviews uncontested conditions of supervised release for plain error. *Id.* at 844. If, however, the record evinces a strategic or intentional choice not to raise an argument about supervised release conditions, then waiver

precludes appellate review. *See United States v. Gibbs*, --- F.4th ---, 2025 WL 747499, at *2 (7th Cir. Mar. 10, 2025).

This Court's review is for plain error; here's why. Everyone at sentencing was on the same page that Mr. Frazier was disabled and could not work. He pointed it out in his sentencing memo. (R. 93, at 3.) The government, too, recognized his "history of mental health disorders." (R. 92, at 3.) The court itself repeatedly noted Mr. Frazier's inability to work, saying in no uncertain terms that "Mr. Frazier cannot work due to his disability." (R. 99, at 3; *see also id.* at 4 ("Mr. Frazier doesn't have an income, and his disability means he doesn't have an earning capability that would support imposition of an assessment.")). Despite all this, the employment condition escaped attention at sentencing.

Mr. Frazier mistakenly failed to contest the condition requiring him to obtain full time employment. Importantly for the plain error analysis, he did not have an opportunity at the hearing to object before the court ruled, *Gibbs*, 2025 WL 747499, at *2, and under Federal Rule of Criminal Procedure 52(b) he didn't have to object afterward. This issue should have been addressed below, but it is not too late to fix the problem on appeal. *Kappes*, 782 F.3d at 844.

### B. The employment requirement is not an appropriately tailored condition of supervised release because Mr. Frazier cannot work.

Because of the nature of Mr. Frazier's conviction, he must serve between five years and the rest of his lifetime on supervised release. 18 U.S.C. § 3583(k). The district court chose a term of seven years.

District courts have discretion to impose conditions of supervised release beyond those required by statute. 18 U.S.C. § 3583(d). Even so, as relevant to this appeal, such conditions must be "reasonably related to the factors set forth in section 3553(a)(1)." *Id.* § 3583(d)(1). Section 3553(a)(1), in turn, instructs courts to consider closely "the history and characteristics of the defendant." To ensure that this Court can conduct meaningful review of supervised release conditions, the district court needs to provide "an adequate statement of reasons, reasonably related to the applicable § 3553(a) factors." *Kappes*, 782 F.3d at 839, 845.

At sentencing, district courts also "should impose conditions of supervised release which are … appropriately tailored to the defendant's offense, personal history[,] and characteristics." *Id.* at 847. The importance of defendant-specific tailoring of supervised release conditions is a theme this Court has often reiterated. *E.g.*, *United States v. Adkins*, 743 F.3d 176, 196 (7th Cir. 2014); *United States v. Goodwin*, 717 F.3d 511, 525 (7th Cir. 2013).

This Court has also suggested that defendants who are unable to work should not be penalized for their inability to obtain employment. *United States v. Hill*, 818 F.3d 342, 345 (7th Cir. 2016). In any case, "[*a*]*ll* discretionary conditions require findings," *United States v. Morgan*, 987 F.3d 627, 634 (7th Cir. 2021), particularly when the reason for a condition isn't obvious, *United States v. Moose*, 893 F.3d 951, 960 (7th Cir. 2018).

The district court erred when it imposed condition five, which requires Mr. Frazier to "be lawfully employed full-time (at least 30 hours per week)." (A., at 61.) That condition admits of no exceptions for his disability and does not permit the condition to be excused by his probation officer. *Compare* U.S.S.G. § 5B1.3(c)(7) ("The defendant shall work full time …, unless the probation officer excuses the defendant from doing so.").

That condition is facially inappropriate given the district court's repeated findings that Mr. Frazier is disabled and unable to work. *Hill*, 818 F.3d at 345. Nor is the condition appropriately tailored to Mr. Frazier's situation. *Kappes*, 782 F.3d at 847. Plus, there's no indication "what will happen if" Mr. Frazier is unable to obtain employment, which "is problematic because conditions of supervised release must make clear what conduct is prohibited, as well as the

scope of the provisions." *United States v. Baker*, 755 F.3d 515, 528–29 (7th Cir. 2014) (citations omitted). At a minimum, the court needed to explain its nonobvious reasons for imposing an employment condition on a person it had already found to be disabled and unemployable. *Moose*, 893 F.3d at 960.

Most likely, imposing this condition was the result of normal human oversight. The condition is plainly inconsistent with the court's stated view of Mr. Frazier's ability to obtain employment. *Cf. Baker*, 755 F.3d at 523 (noting that when a written judgment is inconsistent with the oral pronouncement, the latter controls). But when Mr. Frazier is released a decade from now, he should not be subject to a condition of supervised release he cannot fulfill. This Court should, at a minimum, order a limited remand with instructions to revise or delete condition five from Mr. Frazier's conditions of supervised release. Given Mr. Frazier's serious mental health conditions, the Court should address this issue now, on direct appeal, while he has counsel rather than instruct him to move to modify the conditions down the line. *See* 18 U.S.C. § 3583(e)(2); 28 U.S.C. § 2106.

**C. The error here is plain and affects Mr. Frazier's substantial rights, so this Court should exercise its discretion to correct the issue.**

Relief under plain error review requires the defendant to show an error that was plain at the time of the appeal and affected the defendant's substantial

rights. *See United States v. Olano*, 507 U.S. 725, 735 (1993). In that situation, this Court has discretion to correct the error. *Id.* (citing FED. R. CRIM. P. 52(b)).

The error here is plain. Condition five requires Mr. Frazier to do something the court determined that he could not do—obtain lawful employment. In light of this Court's cases requiring narrow, defendant-specific tailoring of supervised release conditions, it was plain error to require Mr. Frazier to obtain lawful, full-time employment. *E.g.*, *Kappes*, 782 F.3d at 847.

The error here affects Mr. Frazier's substantial rights. The district court recognized "the unfortunate reality is you can't work because of your ongoing disability, and that has existed for some time, since about 2001." (A., at 51.) But if this impossible-for-him condition sticks, he will be facing a lengthy term of reincarceration for not abiding by the terms of his release through no fault of his own. *Accord Baker*, 755 F.3d at 529 ("A defendant may not be recommitted to prison 'for mere inability to pay.'" (citation omitted)). His inability to obtain employment is not speculative, either. *Compare United States v. Lee*, 950 F.3d 439, 449 (7th Cir. 2020) (declining to address a supervised release issue that was "too prospective" because "[a] lot can happen" while a person is incarcerated). He hasn't had a job since 2001, and these proceedings underscore his dire mental

health problems. There is no indication that Mr. Frazier's mental health situation will be better off after a decade in federal prison.

This Court should correct the error because it affects the fairness, integrity, and public reputation of judicial proceedings. *Rosales-Mireles v. United States*, 585 U.S. 129, 137 (2018). Mr. Frazier now faces the specter of reincarceration for not working, even though all agree he cannot do so. "The possibility of additional jail time … warrants serious consideration in a determination whether to exercise discretion under Rule 52(b)." *Id.* at 139.

The Supreme Court "repeatedly has reversed judgments for plain error on the basis of inadvertent or unintentional errors of the court or the parties below." *Id.* at 138 (collecting cases). That's an apt description of this case. But letting a supervised release condition persist despite findings that undermine entirely the basis for the condition implicates the fairness and integrity of the proceedings. *See id.* at 137. Note, too, that the costs of fixing this error are low—we need only a resentencing, *id.* at 140, and perhaps just a limited remand at that, *see Kappes*, 782 F.3d at 866–67. If nothing else, it would "be just under the circumstances" of this case to return the issue to the district court to revisit a condition that the district court almost certainly did not intend to impose. 28 U.S.C. § 2106.

This Court frequently orders limited remands in similar situations, *see e.g.*, *Baker*, 755 F.3d at 529; *Kappes*, 782 F.3d at 866–67; *Moose*, 893 F.3d at 962; *Hill*, 818 F.3d at 346, and should do so here too.

**Conclusion**

Mr. Frazier's significant mental health struggles have been a central feature of this case. His visual and auditory hallucinations in open court should have set off alarm bells and brought the case to a halt until there was reason to be sure that Mr. Frazier was competent. At a minimum, he should not be subject to a supervised release condition that is impossible for him to meet.

Mr. Frazier respectfully asks this Court to vacate and remand for further proceedings.

DATE: March 24, 2025

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By: *s/Jared Hamernick*

2929 Carlson Drive, Suite 101
Hammond, IN 46323
Telephone: (260) 422-9940
Fax: (260) 422-9954
Email: Jared_Hamernick@fd.org

**CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITS**

The undersigned certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) in that it contains 7158 words as shown by Microsoft Word for Microsoft 365 used in preparing this brief.

Date: March 24, 2025

s /*Jared Hamernick*
Jared E. Hamernick, Attorney for
Defendant-Appellant Matthew Frazier

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s /*Jared Hamernick*
Jared E. Hamernick, Attorney for
Defendant-Appellant Matthew Frazier

No. 24-3286

# United States Court of Appeals for the Seventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

*v.*

MATTHEW FRAZIER,
*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana,
South Bend Division
Case No. 3:23-CR-01
The Honorable Judge Damon R. Leichty

ATTACHED REQUIRED SHORT APPENDIX
OF DEFENDANT-APPELLANT MATTHEW FRAZIER

NORTHERN DISTRICT OF INDIANA
FEDERAL COMMUNITY DEFENDERS, INC.

2929 Carlson Drive, Suite 101
Hammond, Indiana 46323
Telephone: (219) 937-8020
Fax: (219) 937-8021
Email: jared_hamernick@fd.org

JARED E. HAMERNICK
Assistant Federal Defender

Attorney for Defendant-Appellant
Matthew Frazier

**TABLE OF CONTENTS FOR APPENDIX**


1. Certificate of Compliance with Circuit Rule 30 ...................................... App. i

2. Transcript of Hearing on Bench Trial, April 9, 2024 (DE 110) ............. App. 1

3. Transcript of Sentencing Hearing, January 23, 2025 (DE113) ........... App. 35

4. Judgment, December 12, 2024 (DE 101) ................................................ App. 59

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

The undersigned counsel hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix.

Date: March 24, 2025

s /*Jared Hamernick*
Jared E. Hamernick, Attorney for
Defendant-Appellant Matthew Frazier

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cause No. 3:23-cr-00001 DRL |
| | ) | |
| vs. | ) | April 9, 2024 - 2:02 p.m. |
| | ) | South Bend, Indiana |
| MATTHEW J. FRAZIER, | ) | |
| | ) | Volume 1 of 1 |
| Defendant. | ) | (Pages 1-34) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DAMON R. LEICHTY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government: JOHN MACIEJCZYK
HANNAH JONES
Assistant United States Attorney
M01 Robert A. Grant Federal Building
204 South Main Street
South Bend, Indiana 46601

For the Defendant: DAVID E. VANDERCOY
Federal Community Defenders, Inc.
Northern District of Indiana
130 South Main Street
Suite 300
South Bend, Indiana 46601

Proceedings reported by stenographic machine shorthand and transcript prepared using computer-aided software.

APRIL 9, 2024

\- - -

(The following proceedings commenced at 2:02 p.m.)

**THE COURT:** ***United States versus Matthew Frazier,*** 3:23-cr-1. We are here on the joint request for a bench trial.

John Maciejczyk --

**MR. MACIEJCZYK:** I'm sorry, Your Honor.

Did you say the government request for a bench trial?

**THE COURT:** Well, I should say defense request for a bench trial without objection from the government.

**MR. MACIEJCZYK:** Yes, Your Honor.

**THE COURT:** All right.

All right. John Maciejczyk and Hannah Jones for the government.

Good afternoon to you both.

**MS. JONES:** Good afternoon.

**MR. MACIEJCZYK:** Good afternoon.

**THE COURT:** David Vandercoy for the defendant.

Good afternoon, Mr. Vandercoy.

**MR. VANDERCOY:** Good afternoon, Your Honor.

**THE COURT:** And you are Matthew Frazier, correct?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** All right. Mr. Frazier, good afternoon to you as well.

**THE DEFENDANT:** Good afternoon.

**THE COURT:** Mr. Frazier, I need to have you placed under oath as we're going to talk about your right to a jury trial and what effect this proceeding will have on that right. So for that purpose, I need to have you please rise and raise your right hand, and Ms. Johnson will administer the oath to you.

(Oath administered.)

**THE DEFENDANT:** I do.

(Defendant sworn.)

**THE COURT:** Mr. Frazier, you're now under oath. If you were to make any false statements today, those false statements could be used against you in another prosecution for perjury or making a false statement.

Do you understand that, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Very good.

Mr. Frazier, the Court has been informed that you want to waive your right to a jury trial.

Is that what you wish to do today -- or to do in this case?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** All right. Before accepting that waiver to a jury trial, I need to walk through some questions with you to explain at least a little bit about what you will be giving up should you waive that right and to ensure that your waiver

is a knowing and voluntary waiver of that right.

Before I get to those questions of substance, let me ask you if you've had discussions with Mr. Vandercoy, your counsel, about waiving your right to a jury trial in this case.

Have you done that, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Okay. Mr. Frazier, am I right that you're 51 years old?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** And remind me how far you went in school.

**THE DEFENDANT:** High school.

**THE COURT:** Did you graduate?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you have any other education beyond your high school diploma?

**THE DEFENDANT:** No, sir.

**THE COURT:** You're able to speak and understand the English language, correct?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** The last time we were together at a hearing, you and I discussed your mental health conditions and the medications that you were taking at that time.

Can you share with me today what you understand to be your mental health conditions.

**THE DEFENDANT:** The same as -- same. I hear things and see things. I have schizophrenia. It's still not changed, sir.

**THE COURT:** And are you still taking medications for those conditions?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you recall today the medications that you are taking at this time?

**THE DEFENDANT:** Well, for -- I get through my mental health, I'm taking Invega.

**THE COURT:** All right. I-N-V-E-G-A, Invega?

**THE DEFENDANT:** Yes.

**THE COURT:** And what else are you taking, Mr. Frazier?

**THE DEFENDANT:** I don't really know. They give me medicine. I don't ask questions.

**THE COURT:** Okay. The last time we were together, you mentioned that you were taking Seroquel. Are you still taking Seroquel?

**THE DEFENDANT:** No, sir. They stopped getting it.

I'm taking Zyprexa now.

**THE COURT:** Zyprexa. Okay.

And is Zyprexa being used in lieu of Seroquel, instead of Seroquel?

**THE DEFENDANT:** Yes.

**THE COURT:** You were also taking trazodone.

**THE DEFENDANT:** Still taking that too, sir, together.

**THE COURT:** At one time, you were taking Effexor. Are you still taking Effexor?

**THE DEFENDANT:** As far as I know. I might be.

**THE COURT:** I'm sorry, sir?

**THE DEFENDANT:** As far as I know. I might be. Like I said, I don't ask questions. Maybe I should.

**THE COURT:** Mr. Frazier, also at one time you were taking asenapine, A-S-E-N-A-P-I-N-E. Are you still taking that medication?

**THE DEFENDANT:** I'm not honestly for sure.

**THE COURT:** All right. Very good.

**THE DEFENDANT:** They keep changing my medications on me.

**THE COURT:** When is the last time you had a medication change, a change in your medications?

**THE DEFENDANT:** When I talked to Oaklawn.

**THE COURT:** How long ago was it that you had a change in your medications?

**THE DEFENDANT:** Not that long ago.

**THE COURT:** Can you give me an estimate in terms of days or weeks or months?

**THE DEFENDANT:** Probably a couple weeks ago.

**THE COURT:** And do you know what change was made in your medications at that time?

Was that to substitute Zyprexa for Seroquel?

**THE DEFENDANT:** Yes.

**THE COURT:** Are there any other medications that you're aware that you are taking, Mr. Frazier, other than the ones we've discussed this afternoon?

**THE DEFENDANT:** Well, they give me some -- they give me some in the morning. Like I said, I don't ask questions. They just -- they give me some in the morning. Then I take my nighttime pills, which is a sleeping pill -- sleeping pills. But I'm taking some in the morning and some in the -- at night.

**THE COURT:** Have you been taking your medications regularly?

**THE DEFENDANT:** Yes.

**THE COURT:** Both in the morning and at night?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** To your understanding, are you taking those medications as prescribed?

**THE DEFENDANT:** Yes.

**THE COURT:** Do those medications assist with your mental health conditions, from your perspective?

**THE DEFENDANT:** The Invega is supposed to. That's what I've got to talk to Oaklawn about because it's -- I don't think it's working because I still see and hear things that

aren't there.

**THE COURT:** You were doing better on the Seroquel than you are the Zyprexa?

**THE DEFENDANT:** Well, they said they just didn't get the Seroquel anymore. That's why they -- the Zyprexa is for sleep, as is -- as is trazodone.

**THE COURT:** All right. Let me ask this. As you sit there now, are you seeing or hearing anything other than the sound of my voice?

**THE DEFENDANT:** Yes.

**THE COURT:** And what are you seeing or hearing as it stands now?

**THE DEFENDANT:** Well, seeing people that have passed away. Hearing, that's him trying to tell me to do bad things.

**THE COURT:** Do you see -- who do you see in the courtroom now?

**THE DEFENDANT:** A lot of people.

**THE COURT:** All right. Do you see Mr. Vandercoy?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you see me?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you see the court reporter here at the bench to my left?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you see Mr. Maciejczyk and Ms. Jones?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you see the marshals that are seated behind you?

**THE DEFENDANT:** Yes.

**THE COURT:** Okay. Do you see the court security officer here in the corner?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you see the three staff members along this desk?

**THE DEFENDANT:** Yes.

**THE COURT:** And do you see the woman seated out in the gallery?

**THE DEFENDANT:** Yes.

**THE COURT:** Are there other people other than those individuals who you see this afternoon?

**THE DEFENDANT:** Yes, a lot of others.

**THE COURT:** Okay. How many others do you see right now?

**THE DEFENDANT:** I can't count them all.

**THE COURT:** Can you give me an estimate of how many people you see?

**THE DEFENDANT:** I don't know. A hundred.

**THE COURT:** And where are they here in the courtroom?

**THE DEFENDANT:** Just all out and about.

**THE COURT:** Are there individuals you see here right

in front of the bench, in the well of the courtroom?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you see any other people seated out in the gallery at all?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you see anybody seated here in the jury box?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you see any people behind me?

**THE DEFENDANT:** Yes.

**THE COURT:** And what sort of voices or things do you hear people saying to you?

**THE DEFENDANT:** Trying to get me to do bad things.

**THE COURT:** And what sort of bad things are they saying that they would like you to do?

**THE DEFENDANT:** Hurt people.

**THE COURT:** Are those things that you're hearing other people say, other than my own voice, are they interfering with your ability to hear or understand what I'm saying to you?

**THE DEFENDANT:** At times, yes.

**THE COURT:** Are you able to block out or put those voices aside and focus only on what I'm saying to you, Mr. Frazier?

**THE DEFENDANT:** I'm trying.

**THE COURT:** All right. In the course of this

hearing, I want you to only focus on what I'm saying to you. All right, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** If for any reason there's something that interferes with what I'm saying to you, just ask me to restate what I'm asking or saying to you, and I'll try to explain it better. All right, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Okay. Mr. Frazier, when you were taking Seroquel, did that reduce or eliminate the voices that you hear or the people that you see here in this courtroom?

**THE DEFENDANT:** No.

**THE COURT:** Do any of the medications that you take impair, that is, hurt, your ability to understand what I'm saying --

**THE DEFENDANT:** No.

**THE COURT:** -- today?

**THE DEFENDANT:** Sorry.

**THE COURT:** Mr. Frazier, other than hearing voices other than my own or seeing people other than who I've described and asked you specifically about here in the courtroom, are you experiencing any other dynamics, conditions, at this point, as you sit there now --

**THE DEFENDANT:** No.

**THE COURT:** -- that is affecting your ability to

understand what I'm saying to you?

**THE DEFENDANT:** No, sir.

**THE COURT:** Other than the medications that you have taken as prescribed, both in the morning and in the evening, have you taken any other drugs, medicine, pills, or alcohol in the last 24 hours?

**THE DEFENDANT:** No, sir.

**THE COURT:** Mr. Frazier, I want to discuss with you some aspects of a jury trial. And for these questions, again, I want you to focus only on what I'm saying to you, not what someone else is saying to you at this point.

Can you do that for me?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** All right. Do you understand that you are entitled to a trial by a jury based on the charges filed against you in this case?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** And what do you understand a jury to be?

**THE DEFENDANT:** A jury is, like, 12 people, and they judge whether I'm guilty or innocent.

**THE COURT:** That's right. A jury trial means you'll be tried by a jury that consists of 12 people, and those 12 people, just as you said, Mr. Frazier, would decide whether you are guilty of any charge or whether you're not guilty of any charge.

Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you also understand that those 12 people would have to unanimously agree that you are either guilty or not guilty of a charge?

Let me rephrase that.

Do you understand that all 12 people would have to unanimously agree that you are guilty of that charge before you could be found guilty? Do you understand that, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand what I mean when I say "unanimously"?

**THE DEFENDANT:** All together.

**THE COURT:** That's right. All 12 people would have to agree that you are, in fact, guilty of the charge before you could be found guilty.

Do you understand that, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** If I approve your waiver in this case of a jury trial, instead of being tried by those 12 citizens who would have to all agree that you are guilty of a charge before you could be found guilty or, for that matter, to decide whether you are not guilty of the charge, instead you would be tried to the Court, and only I would decide then whether you are guilty or not guilty of any charge against you.

Do you understand that, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** There may be, Mr. Frazier, advantages to being tried by a jury of your peers made up of 12 people. There may also be disadvantages that may attend your trial by a jury of 12 people of your peers.

Have you discussed those advantages and disadvantages with Mr. Vandercoy?

**THE DEFENDANT:** Yes.

**THE COURT:** Likewise, there may be advantages or disadvantages to be tried solely to the Court, that is, solely before me without a jury.

Have you, likewise, discussed those advantages and disadvantages with Mr. Vandercoy?

**THE DEFENDANT:** Yes.

**THE COURT:** Mr. Frazier, do you have, at this time, any questions that still linger, that you still have, that you want to ask of your counsel, outside anybody else's hearing, of course, to seek his advice about whether you should, in fact, waive your right to a trial by a jury?

**THE DEFENDANT:** I guess, yeah, we can discuss it.

**THE COURT:** Do you have additional questions for your counsel?

**THE DEFENDANT:** Yeah, I do now.

**THE COURT:** Okay. At this point, I think I'm going

to give you a moment, Mr. Vandercoy, to at least speak with Mr. Frazier. I have more questions, of course, but let's pause there and see if you can address any questions he might have, if you would, please.

**MR. VANDERCOY:** Thank you.

(Pause in the proceedings while Attorney Vandercoy confers with the defendant.)

**MR. VANDERCOY:** Thank you, Judge.

**THE COURT:** Thank you, Mr. Vandercoy.

Mr. Frazier, have you been able to ask the questions of your counsel that you need to ask?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Okay. And have you received at this point satisfactory information from your counsel as to your questions?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Okay. Do you have any other questions that you want to discuss with your counsel?

**THE DEFENDANT:** No, sir.

**THE COURT:** Do you believe that, at this time, you understand your right to a trial by a jury?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Is it still your wish to waive that right and have your case in this criminal matter charged solely to the Court?

**THE DEFENDANT:** Yes.

**THE COURT:** Mr. Vandercoy, let me turn to you, if I might, just to confirm on your side.

Have you discussed the advantages and disadvantages of proceeding with a bench trial instead of a jury trial with Mr. Frazier?

**MR. VANDERCOY:** Yes, Your Honor.

**THE COURT:** Do you have any doubt in your mind as to whether Mr. Frazier is waiving his right to a jury trial in a knowing and voluntary way?

And, yes, I ask that question in a specific way.

**MR. VANDERCOY:** Yes.

I can report that I believe his decision-making is at about the same level as when he was returned from the MCC and determined to be competent.

He does have issues understanding our communications on a long-term basis.

I think he does, in fact, understand his right to a jury trial, and he has expressed on several occasions that he would rather not have a jury trial, so -- but I always have reservations about the quality of his decision-making given his background.

He did graduate from high school, but he was in special education for his -- basically for his entire academic career.

When he was last given a common or generalized test, he was in eighth grade. It was the ISTEP test. And he read at a second grade level.

So there are -- I have reservations, but I believe he does understand what he's doing today.

**THE COURT:** Has anything come to your attention, Mr. Vandercoy, that would suggest that Mr. Frazier is not competent to waive a right to a jury trial?

**MR. VANDERCOY:** No.

**THE COURT:** Mr. Vandercoy, let me ask a couple more questions, if I might.

What are the reasons for waiving a jury trial in this case, to the extent you can disclose those?

**MR. VANDERCOY:** In my opinion or Mr. Frazier's opinion?

**THE COURT:** Well, as best as you can share with the Court, without violating privilege, of course, what do you see as the rationale for preferring a bench trial as opposed to a jury trial in this case?

**MR. VANDERCOY:** I think the Court will be -- it will be easier for the Court to make rational decisions regarding any defenses that Mr. Frazier offers, rather than a layperson who's viewed the child pornography which will be introduced into evidence. I think those images will, in fact, sway a fact finder away from the mission of deciding basic questions about

his guilt or innocence.

**THE COURT:** And can you give me some specificity as to what you foresee as those defenses?

**MR. VANDERCOY:** Whether or not he was aware that images were on his computer and potentially why they were on his computer.

**THE COURT:** So this all goes to the scienter requirement, whether he knows this is of a minor and whether he knows that this was a minor engaged in sexually explicit conduct? Is that the defense?

**MR. VANDERCOY:** No. Whether he knew that those images -- and let's, as a given, understand -- let's assume that, hypothetically, he understood that they were pornography -- child pornography, but simply whether he knew that they were, in fact, present on his computer -- or on his iPad.

**THE COURT:** And is it the primary concern that, if the jury sees any images, that they'll make, as you put it, a less rational assessment of whether Mr. Frazier knew this material was on his iPad?

**MR. VANDERCOY:** Correct.

**THE COURT:** If the defense is focused on that issue, as you've described it, would the parties not stipulate that the material was, in fact, child pornography, that is, that it was of a minor engaged in sexually explicit conduct?

**MR. VANDERCOY:** I think Mr. Frazier would prefer to stipulate. I don't know that the government would accept a stipulation. But I also know that Mr. Frazier would rather not be judged on that issue by a group of 12 laypersons.

**THE COURT:** Are there other reasons, other than that one, for waiving the right to a jury trial in this case, Mr. Vandercoy?

**MR. VANDERCOY:** Well, those -- you know, what I believe is the prejudicial effect of those images.

And separate from that is the question of whether he would want to be judged by 12 laypersons. He has expressed to me that he does not want to -- he does not want to be observed by a jury of 12 laypersons and having them make a judgment about his guilt or innocence.

**THE COURT:** So I'm understanding and appreciating that preference as he's shared it.

Why is that in his best interest?

**MR. VANDERCOY:** Well, I think it is correct that a layperson would, in fact, be less likely to make the determinations -- the legal determinations about whether the evidence is sufficient to show his knowing possession than would be the Court.

**THE COURT:** All right. Thank you, sir.

**MR. VANDERCOY:** Sure.

**THE COURT:** Mr. Maciejczyk, has anything come to your

attention that suggests that Mr. Frazier may not be competent to waive his right to a jury trial?

**MR. MACIEJCZYK:** No, Your Honor.

I think that the evaluation that he underwent earlier also kind of confirms that he would be competent to make this decision, and I'd just like to read the last paragraph of that. "Mr. Frazier currently suffers from a mental disease, major depressive disorders. His symptoms have resulted in impairment in functioning in several areas of his life, yet he's currently psychiatrically stable, and his symptoms do not appear to be impacting his ability to understand and rationally apply facts related to the legal process in his case. He also presented as cooperative and expressed a willingness to work with his attorney. Based on the totality of these findings, it's the opinion of the undersigned psychologist that Mr. Frazier doesn't currently suffer from a mental disease or defect which renders him unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense."

And that is countersigned by not just the forensic psychologist but also the psychiatrist -- the chief psychiatrist at the Chicago Metropolitan Center. I can't remember the exact name of it. The Chicago --

**THE COURT:** Metropolitan Correctional Center?

**MR. MACIEJCZYK:** That's right. Yes.

**THE COURT:** I have that report here too, and I've read that as well. I do note the report is dated April 11 of 2023, so we're just past a year on that report. But that was, in fact, the concluding paragraph to that forensic evaluation.

Anything else that's come to your attention, Mr. Maciejczyk, as to whether Mr. Frazier is competent or not competent to waive his right to a jury trial?

**MR. MACIEJCZYK:** Other than the things that he recounted at the beginning of this -- the questioning by the Court. I believe that he has demonstrated that he understands the difference between a jury trial and a bench trial and that he is making a rational decision that he would prefer to have his case tried before the Court.

**THE COURT:** Is it, in fact, true that if this case were going to a jury trial, that the government would be unwilling to stipulate as to the nature of the images that were on this file on the iPad?

**MR. MACIEJCZYK:** Yes, Your Honor. I think the nature of the images are of such a nature that there's -- if the jury -- the jury needs to see them to be able to understand that it would be very difficult for an individual to have those on his computer and not realize it because of just the way they would stand out.

**THE COURT:** If this is a bench trial, is the government willing to reach a stipulation in that regard with

Mr. Frazier?

**MR. MACIEJCZYK:** I don't think so because I think that the same logic would apply with regard to you. I mean, I haven't made a decision about that because I don't know if we're going to have a bench trial, but I haven't -- so I don't know exactly what the decision would be relating to that.

There is also the issue of whether or not the images depict prepubescent children or children under the age of 12.

**THE COURT:** All right. Anything else, Mr. Maciejczyk?

**MR. MACIEJCZYK:** No, Your Honor. Thank you.

**THE COURT:** Thank you.

**MR. VANDERCOY:** Judge, could I have a moment?

**THE COURT:** Certainly. Thank you.

(Pause in the proceedings while Attorney Vandercoy confers with the defendant.)

**MR. VANDERCOY:** Thank you, Judge.

**THE COURT:** Thank you.

Mr. Vandercoy, anything to add?

**MR. VANDERCOY:** No, Your Honor.

**THE COURT:** Mr. Frazier, I'm showing you a document that's entitled a waiver of a jury trial. Have you seen this document before?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** All right. Have you reviewed this

document with Mr. Vandercoy?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** There's a signature there on the document, just in the middle of the page. Is that your signature?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Did you read this waiver of a jury trial before you signed it?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** And did you, in fact, review this with Mr. Vandercoy before you signed it?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Mr. Frazier, a question I did not ask you just yet.

When it comes to the selection of the 12 jurors, this Court will call into the courtroom a larger number of prospective jurors than just the 12 who will serve on the jury.

Do you understand that, sir?

**THE DEFENDANT:** Not really.

**THE COURT:** All right. Let me explain that a little better.

There will be a jury selection process. All right?

**THE DEFENDANT:** Uh-huh.

**THE COURT:** You and your counsel will participate in that process.

Do you understand that you have the right to participate in that process?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** And that process is a process whereby you get to help select who the 12 jurors will be who would ultimately decide your case if you proceeded with a jury trial.

Do you understand that right?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** The government also has that same ability to participate in that process, to help choose the jurors who would help decide or who would then decide whether you are guilty or not guilty of any charge.

Do you understand that they, too, have the right to participate in that process?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Does the fact that you are able to participate in selecting the 12 jurors who would decide whether you are guilty or not guilty of a charge change your mind in any way about your decision to waive your right to a jury trial?

**THE DEFENDANT:** I'm still sticking with my waiver of -- the waiver of the jury trial.

**THE COURT:** Okay. You still want the Court, that is, me, to decide alone whether you are guilty or not guilty of any charge against you --

**THE DEFENDANT:** Yes, sir.

**THE COURT:** -- is that right?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** All right.

Counsel, anything else to add?

Mr. Maciejczyk?

**MR. MACIEJCZYK:** No, Your Honor. Thank you.

**THE COURT:** Thank you.

Mr. Vandercoy?

**MR. VANDERCOY:** No, Your Honor.

**THE COURT:** Okay. All right. As you all know, under Rule 23, I have to decide whether the defendant has knowingly and voluntarily waived his right to a jury trial, including in writing.

We already know that the government consents, and ultimately the Court needs to approve and evaluate in some reasonable measure whether it is, in fact, in the defendant's best interest to be tried to the Court as opposed to the jury.

I do believe Mr. Frazier has exhibited in the course of questioning today a knowledge and understanding of what it means to have a right to a jury trial, to be tried by a jury of his peers, by 12 people, including the fact that a verdict would need to be unanimous as to his guilt before he could be found guilty.

I do find, given the course of the questioning and

responses and including the forensic record, the forensic evaluation of just a year ago, that his waiver is knowing and voluntary.

The real question here is whether the Court should approve of that waiver. It strikes me that this is, in truth, a factual question, ultimately leads to a legal question, but a defense, at least as it's been presented to me, that is very much factual in nature.

Typically, the jury would be best designed to address that factual question. But I think I see, at least from the defendant's perspective, a rationale, indeed a sound rationale, as to why in this case it might be better suited for presentation to the Court as opposed to a jury.

And though there certainly is great value in holding and conducting a jury trial, and this Court, consistent with the law, is a firm believer in that system, I will approve the waiver of a jury trial right and on this record approve the waiver and proceed with the trial, as scheduled, to the bench alone.

So let's talk about where we go from here. I think I received from the defense a motion in limine. Mr. Vandercoy, I realize that those don't lose their potency in a bench trial. That being said, the motion didn't give me much by way of explanation as to exactly what you are looking to exclude, and it might be helpful if I had that explanation, that color, as I

went about addressing the motion as presented.

From the government's perspective, I think a response was due yesterday, but I haven't received a response to the motion in limine either, so -- unless I have my schedule wrong, but I reviewed that before we came out today.

Mr. Vandercoy, can you help me with the motion in limine and what you're looking to exclude.

**MR. VANDERCOY:** Judge, it's my recollection, which sometimes is faulty, that I requested that the government be precluded from raising evidence that occurred when Mr. Frazier was on probation. I think that same evidence is now the subject of a government 404(b) notice that was filed today.

**THE COURT:** This is the prior conviction?

**MR. VANDERCOY:** I'm sorry?

**THE COURT:** Is this a prior conviction or --

**MR. VANDERCOY:** It's a prior conviction, and it's also events that occurred where, I believe, the probation officer in state court would be called by the government to testify regarding an application or -- I think it's an application called Covenant Eyes and conduct by Mr. Frazier related to that program or application.

Although I'm not quite sure exactly what occurred in state court, I believe the government intends to offer it to show, well, in my view, propensity, which would mean it's not admissible. The government has a different view, I believe, of

what that evidence would show.

I also move to exclude any reference to his prior conviction. Obviously if he were to testify, then there's a different set of rules which would apply, but I'd move to exclude any reference to that in their case in chief.

**THE COURT:** And the prior conviction is for possession of child pornography? Is that --

**MR. VANDERCOY:** I believe --

**THE COURT:** -- the one you're talking about?

**MR. VANDERCOY:** -- that's correct. Yes.

**THE COURT:** So help me with the propensity argument.

So Covenant Eyes is a software program that monitors his use of electronic devices; is that right?

**MR. VANDERCOY:** I think so, yes.

**THE COURT:** Okay. And are you concerned that the evidence -- the testimony that the government would present is about Mr. Frazier's ability or conduct to circumvent that software or that application?

**MR. VANDERCOY:** Yes. And I believe that would tend to indicate a propensity for him to possess child pornography. At least that's what I perceive the argument to be or, rather, that -- I'm not sure what their purpose is. I don't think it shows motive, intent, et cetera.

Any permissible use under 404(b), I think, is clearly just propensity evidence that you did this; therefore, it's

very likely that you are guilty of the charged offense.

**THE COURT:** All right. That helps at least sharpen my lens. Thank you, Mr. Vandercoy.

**MR. VANDERCOY:** Thank you.

**THE COURT:** Mr. Maciejczyk, is the government working on a response to the motion?

**MR. MACIEJCZYK:** Your Honor, for some reason we didn't -- the date for that response was not calendared, and I'm not sure why. I would ask the Court -- the time can be extended by the Court based on excusable neglect by the government.

In this case, the government did not intentionally fail to file it on time. It was inadvertent. My intent was to file the 404(b) notice as a response to the motion in limine, and that 404(b) notice was filed this morning, so it is, I guess, approximately 12 hours late.

**THE COURT:** How much time do you need to get a response on file, Mr. Maciejczyk?

**MR. MACIEJCZYK:** Your Honor, the 404(b) notice will serve as our response.

**THE COURT:** That's the response to the motion in limine?

**MR. MACIEJCZYK:** Yes, because it --

**THE COURT:** All right.

**MR. MACIEJCZYK:** -- it fleshes out all of the facts

related to the defendant's -- well, related to the events or facts at issue.

It also argues our position that 404(b) should apply and that the information should come in to be considered by the Court for several different purposes that are permissible under 404(b), such as motive; the fact that the defendant intentionally avoided the blocking software in order to have this on his computer; intent, for the same reason; and also lack of mistake and -- the notice says it more eloquently.

**THE COURT:** And I'll read it, Mr. Maciejczyk. And I understand you're working through those exceptions through 404(b), so I'm tracking you. I have not read or studied the 404(b) notice that was filed by the government, but I can take that as a response and review that in preparation for our final pretrial conference next week.

Mr. Vandercoy, do you have any objection to the Court's utilization of that as a response to the motion in limine?

**MR. VANDERCOY:** No, I don't have an objection to using that as a response to the motion in limine, but I do have an objection to the 404(b) notice as untimely because I don't now have the opportunity to investigate the underlying facts.

**MR. MACIEJCZYK:** May I respond to that, Your Honor?

**THE COURT:** Certainly. Thank you.

**MR. MACIEJCZYK:** According to the Court's scheduling

order, the 404(b) notice has to be filed five days prior to this trial, and this notice is filed well in advance of that time period.

**THE COURT:** So, Mr. Vandercoy, do you need time to file a reply in any way?

**MR. VANDERCOY:** Yes, Your Honor. A couple of days would be sufficient, if that would be useful to the Court.

**THE COURT:** Yes. Our final pretrial is April 15 at 3:00.

So we sit here on a Tuesday. Would Thursday give you enough time to reply?

**MR. VANDERCOY:** Yes, Your Honor.

**THE COURT:** Mr. Maciejczyk, any objection to affording Mr. Vandercoy a chance to reply to the 404(b) notice?

**MR. MACIEJCZYK:** No objection, Your Honor.

And I would ask that the Court grant the government's oral motion to permit -- to deem the 404(b) notice timely filed as a response to the original motion.

**THE COURT:** So, Mr. Vandercoy, on that point alone, just in terms of timeliness, my order does allow for uncharged conduct -- notice of uncharged conduct to be tendered five working days before trial.

So is there some reason why you view this as, in fact, late at this point?

**MR. VANDERCOY:** Actually, I believe I saw names in

the notice that I did not recognize, and it's a matter of -- from discovery that I did not recognize. I think there are new names there and new information that I was not aware of, and so that would be largely my reply, is it would be untimely for that purpose.

**THE COURT:** All right. This is what I suggest as a path forward. It sounds like, to the extent there's any new information, you need time to review that, Mr. Vandercoy. You all can confer about that as necessary, to the extent there's new information there.

I'm not going to rule on whether a certain component of the disclosure was timely or not or whether there's cause to address any perceived prejudice on this until you all have had an opportunity to talk together. I'll take all of this up at the final pretrial conference on Monday.

You can add anything you like in your reply to be filed by Thursday this week, Mr. Vandercoy, including a response -- or a reply in favor of the motion in limine or any objections that you have on the 404(b), and then I'll take that up at the final pretrial conference.

But I suspect the two of you talking, in the coming days, may be able to address any concerns you have about the 404(b). If not, I'll take them up at the final pretrial conference.

Does that make sense?

**MR. VANDERCOY:** Thank you. Yes.

**THE COURT:** Mr. Maciejczyk?

**MR. MACIEJCZYK:** That's fine, Your Honor.

I do want to give the Court a heads-up about a personal situation. I have an older sister that lives by herself in Pittsburgh. She's going to be undergoing an operation on Friday. I'm leaving Thursday morning to be there with her. I don't anticipate that I will -- that I won't be here on Monday, the 15th, but it's possible that I may end up staying there, and I -- you know, I certainly hope that doesn't happen, but I just wanted to give the Court and Mr. Vandercoy a heads-up of that potential.

**THE COURT:** All right. Well, best wishes to you and your family and my hopes that the procedure goes well. Obviously we have Ms. Jones here if, for some reason, there's need to pivot for Monday, but I appreciate you letting the Court know, Mr. Maciejczyk.

**MR. MACIEJCZYK:** Thank you.

**THE COURT:** Anything else, sir?

**MR. MACIEJCZYK:** No.

**THE COURT:** Thank you. All right. That's the only sort of case-substantive question that I had outside of the waiver issue today.

Any other matters that we should take up while we are together?

Mr. Vandercoy?

**MR. VANDERCOY:** No, Your Honor.

**THE COURT:** Okay. Mr. Maciejczyk, anything else, sir?

**MR. MACIEJCZYK:** No, Your Honor.

**THE COURT:** All right. Very good.

We'll see you for the final pretrial conference. Thank you.

(Proceedings concluded at 2:55 p.m.)

\- - -

CERTIFICATE

I, MELODY M. GOODRICH, certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

Melody M. Goodrich
______________________________ DATE: January 22, 2025
MELODY M. GOODRICH
Federal Realtime Certified Reporter
United States District Court
Northern District of Indiana
South Bend Division

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cause No. 3:23-cr-00001 DRL |
| | ) | |
| vs. | ) | December 12 - 1:32 p.m. |
| | ) | South Bend, Indiana |
| MATTHEW J. FRAZIER, | ) | |
| | ) | Volume 1 of 1 |
| Defendant. | ) | (Pages 1-24) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DAMON R. LEICHTY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government: HANNAH JONES
JEROME McKEEVER
Assistant United States Attorney
M01 Robert A. Grant Federal Building
204 South Main Street
South Bend, Indiana 46601

ALSO PRESENT: Detective Vicki Maxwell

For the Defendant: DAVID E. VANDERCOY
Federal Community Defenders, Inc.
Northern District of Indiana
130 South Main Street
Suite 300
South Bend, Indiana 46601

Also present: Lesley Martin, U.S. Probation

Proceedings reported by stenographic machine shorthand.
Transcript prepared using computer-aided software.

DECEMBER 12, 2024

\- - -

(The following proceedings commenced at 1:32 p.m.)

**THE COURT:** This is ***United States versus Matthew Frazier***, 3:23-cr-1. We're here for purposes of sentencing.

Good afternoon to you, Mr. Frazier.

**THE DEFENDANT:** Good afternoon.

**THE COURT:** David Vandercoy here for the defendant.

Mr. Vandercoy, good afternoon.

**MR. VANDERCOY:** Good afternoon, Your Honor.

**THE COURT:** Assistant United States Attorneys Hannah Jones and Jerry McKeever for the government.

Good afternoon to you both.

**MS. JONES:** Good afternoon, Your Honor.

**MR. McKEEVER:** Good afternoon.

**THE COURT:** And Detective Vicki Maxwell.

**MS. MAXWELL:** Good afternoon, Your Honor.

**THE COURT:** Good afternoon to you.

Lesley Martin here for Probation.

Ms. Martin, good afternoon.

**PROBATION OFFICER:** Good afternoon, Your Honor.

**THE COURT:** Thank you for your service and that of your team. Always appreciated, what you all do.

Mr. Frazier, you have the right to make a statement during this proceeding, and to facilitate that, I need to have

you placed under oath. So if you'll please rise and raise your right hand, Ms. Johnson there will administer the oath to you.

(Oath administered.)

**THE DEFENDANT:** I do.

(Defendant sworn.)

**THE COURT:** Thank you, sir. You may be seated.

Mr. Frazier, you're now under oath. If you were to answer any question falsely -- sorry.

If you were to make any false statement today -- if you were to make any false statement today, that false statement may be used against you not only by the Court today but in another prosecution for perjury or making a false statement. Do you understand that, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Mr. Frazier, on September 4th of this year, just a few months ago, the Court found you guilty of the sole count of the superceding indictment that charged you with possessing child sex abuse material, child pornography.

Since that time, Mr. Frazier, I have received a copy of the revised presentence report that was prepared and filed on November 22nd of this year. I've had an opportunity to review that report. Attached to the report was an addendum which I reviewed as well.

In addition to that, there were proposed conditions to govern any supervised release that might be imposed by the

Court today, and I reviewed those conditions as well.

In addition to that material, Mr. Frazier, both sides submitted briefs to argue for what a reasonable sentence should be in your case, and I've read those briefs, including one that Mr. Vandercoy sent on your behalf. So I've had an opportunity to review all of that information.

There was additional material that was submitted with the briefing that included the prior state conviction information, as well as a 2019 competency opinion that Mr. Vandercoy submitted, and certain school records, and I have reviewed the lot of that.

Just to confirm with both sides, first with the government, Ms. Jones, the government received a copy of the revised presentence report and has no objections to it; is that right?

**MS. JONES:** That's correct, Your Honor.

**THE COURT:** Thank you.

Mr. Vandercoy, to confirm with you and Mr. Frazier, you and he received a copy of the revised presentence report?

**MR. VANDERCOY:** Yes, we did, Your Honor.

**THE COURT:** Did you have the opportunity to review that together?

**MR. VANDERCOY:** We did.

**THE COURT:** And am I correct that the defendant has no objections to the report?

**MR. VANDERCOY:** That's correct, Your Honor.

**THE COURT:** Thank you, sir.

Mr. Frazier, let me confirm with you as well. Did you read for yourself a copy of the revised presentence report?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** And did you review it with Mr. Vandercoy, your counsel?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Mr. Frazier, at this point, sentencing is largely a two-step process. The first step is I need to calculate the guideline range that's recommended to me by the United States Sentencing Guidelines.

Once I have that guideline range in hand, then it's my job to turn to a federal statute. It's called 18 U.S.C. § 3553(a). That's the statute that guides the Court's decision-making today. It lists several factors that the Court needs to weigh and consider in deciding your sentence this afternoon.

It is my job at the end of the hearing, Mr. Frazier, to decide a reasonable sentence, and by that I mean one that's sufficient but not greater than necessary to satisfy federal sentencing goals.

So we're going to start with the guideline calculation, and then I'll turn to argument and decision-making on the factors under that federal statute. So let's walk

through the guideline range together today to start.

Without objection, the Court will adopt as its findings paragraphs 1 to 95 of the revised presentence report.

Mr. Frazier, after you begin at Offense Level 18 under the guidelines, you receive two levels because the material that you possessed involved a prepubescent minor, two more levels in addition to that because the offense involved the use of a computer device, and then five additional levels because the offense involved 600 or more images. That, thus, concludes at Level 27 for that portion of the calculation.

The guidelines assess three criminal history points against you for prior sentences, and that places you in what we call Category II, and there the guidelines recommend a sentencing range of 78 to 97 months. So someone at Offense Level 27, in Category II, the sentence is a recommended 78 to 97 months.

However, you do have prior qualifying convictions for felony child exploitation and possession of child pornography, and so the law imposes a 10-year minimum, and that makes, thus, the new effective range 120 months.

Counsel, have I calculated the guideline range correctly?

Ms. Jones?

**MS. JONES:** Yes, Your Honor.

**THE COURT:** Mr. Vandercoy?

**MR. VANDERCOY:** Yes, Your Honor.

**THE COURT:** Let's then turn to argument on the factors, unless either side has any additional evidence to present today.

Ms. Jones?

**MS. JONES:** Your Honor, we will just be formally submitting. We realize this is part of the trial record, but we would -- in an abundance of caution, we're moving to admit Government Exhibits 1 and 2, which are the abstract of judgment and judgment of conviction of Mr. Frazier's previous conviction.

**THE COURT:** Was that Exhibit 45 during the trial?

**MS. JONES:** Your Honor, I would need to -- 45 or 47. I'll have to take a look.

45, Your Honor.

**THE COURT:** Mr. Vandercoy, any objection?

**MR. VANDERCOY:** No, Your Honor.

**THE COURT:** All right. We'll show Exhibits 1 and 2 then submitted for purposes of sentencing.

You may approach, of course.

**MS. JONES:** Thank you.

**THE COURT:** Thank you.

**MS. JONES:** May I?

**THE COURT:** You may. Thank you.

**MS. JONES:** In regards to the nature and circumstance

of the offense, Mr. Frazier was on probation for a state conviction of child exploitation and possession of child pornography. As a condition of that offense, Mr. Frazier was required to install accountability monitoring software on his devices, specifically Covenant Eyes.

On September 16, 2022, law enforcement executed a search warrant at Mr. Frazier's home that he shared with his mother. And on Mr. Frazier's bed they located an iPad. That forensic examination of the iPad revealed 18 images and 18 videos of child sex abuse material. Some of that contained prepubescent children; others did not.

The forensic examination also showed the absence that that software had been installed.

In regards to the history and characteristics of Mr. Frazier, Mr. Frazier is 51 years old. He does have a history of mental health disorders. His first contact with the criminal justice system was in 1994 and 1995. That was for misdemeanor offenses.

And then he had a large gap in his criminal history, which shows his ability to comply with the law, which makes his two more recent back-to-back convictions and how quickly he reoffended particularly concerning.

In 2019, Mr. Frazier pled guilty to the child exploitation in possession of child pornography and received a split sentence for that offense between the Indiana Department

of Corrections, LaPorte Community Corrections, and probation. And within a month, Mr. Frazier violated those terms of his probation by not installing and working around the Covenant Eyes software.

Additionally, the PSR reflects that in 2021 -- I believe paragraph 63 -- that he admitted to being addicted to adult pornography, that then transitioned into the child pornography addictions.

He was ordered to receive sex offender treatment. He was receiving that when he committed this offense, which shows that it was not enough to prevent his recidivism.

In regards to the presentence report in the exhibits submitted today, Exhibits 1 and 2 of the prior possession of child pornography and exploitation, this was addressed in the sentencing memorandum, but we request that the Court find those convictions qualify to enhance Frazier's sentence under 18 2252A(b)(2), the case law being *Almendarez-Torres*, and that holding that the sentencing Court can make certain determinations regarding a defendant's criminal history when that history increases the statutory penalty range.

We also cited the *Coffman* case, which shows that that possession of child pornography, prior conviction alone, is enough to enhance that sentence.

Considering the 3553(a) factors, including the need for the sentence to promote respect for the law, afford

adequate deterrence of criminal conduct, protect the public from further crimes, the government is requesting a 120-month sentence, which is the statutory minimum, followed by 5 years of supervised release.

Any questions -- or I'm happy to answer any questions.

**THE COURT:** Thank you, Ms. Jones.

**MS. JONES:** Thank you.

**THE COURT:** Mr. Vandercoy.

**MR. VANDERCOY:** Thank you, Judge.

Mr. Frazier was victimized when he was a small child. It's not clear what role that played in his subsequent mental health challenges, but it's simply a reality that he was sexually assaulted when he was, his sister believes, 4 years old. I think he thinks it was when he was 8 years old. That's not clear to me, at least. But the fact that he was sexually assaulted is clear.

It's also clear that he was in special education his entire life. When he was one month short of being 16 years old, the ISTEP tests were administered, and he was reading at a 2nd grade level when he was one month short of being 16.

He has a fairly long mental health history. Social Security has determined that he's been disabled since he was about 30 years old or for the last 20 years. I've made multiple efforts to obtain those records but have never been

able to get them.

He has been diagnosed, though, in other settings with major depressive disorder, bipolar disorder, and schizoaffective disorder, and clearly has not -- I guess we can call it significant mental health challenges, but also his ability to understand what's going on around him and protect himself is limited also.

The guidelines in this case, the child pornography guidelines, which many judges have concluded are out of date in terms of how they aggregate points for number of images, because when they were drafted, the images were largely paper images. Adding points for use of a computer tends to drive it up higher than perhaps it should be now when computer use is the typical means of people communicating, as opposed to the written hand -- longhand writing, and those guidelines come out to be 78 to 97 months.

So they're high to begin with. Most judges consider them high -- or many judges consider them high. All defense lawyers consider them to be too high.

But they don't apply in this case because of his prior conviction, and so I guess where I'm trying to go is that 120 months, the mandatory minimum, is clearly sufficient and probably greater than necessary but mandated under the statute to accomplish the purposes of sentencing in this case.

Given his mental health history, given his

limitations with regard to acquiring and employing knowledge that others are able to use, that sentence shouldn't -- the Court shouldn't go any higher than the 120 months.

In addition, we would ask that the Court recommend that he be placed in a facility where he's safe from other inmates. The nature of the offense and his mental health challenges and limitations make him particularly vulnerable to other inmates, and so we would ask the Court to make that recommendation as part of the judgment in this case.

Thank you.

**THE COURT:** Thank you, sir.

Ms. Jones, any reply?

**MS. JONES:** No, Your Honor. Thank you.

**THE COURT:** Mr. Frazier, as I indicated when we started this afternoon, you have the right to make a statement if you would like. If you would like to make a statement, now is that time.

Do you have a statement you wish to make?

**THE DEFENDANT:** No, sir.

**THE COURT:** Okay. Thank you. All right.

Mr. Frazier, let me explain the sentence I've reached and the reasons for it. I have considered all the factors under that federal statute that we discussed in deciding your sentence today.

The statutory minimum measurably alters what would

otherwise be your recommended guideline range, and both sides advocate for nothing higher than 10 years. And I do think, getting to the punch, that the sentencing factors concur with their shared proposal.

The statutory minimum reflects the recidivism risk and dangers that are posed by repeat child sex offenders and a judgment from our Congress about the serious nature of crimes against children.

And appreciating Mr. Vandercoy's arguments as to the policies for certain enhancements that the guidelines employ in the first instance, whether I ultimately agree with the policy arguments or not, it does, I think, tend to underscore, to show, Mr. Frazier, that there has been a measurable increase in your guideline range because of that statutory minimum, and that's a reason why there's no need to go higher.

You possessed and you accessed child sex abuse material on your iPad. That alone is serious for reasons this Court has echoed many times, and that's particularly true because of the victims who are portrayed in those images, Mr. Frazier.

Here you decided to evade supervision, the monitoring software, as well in 2022, to possess the material soon after your two prior felony convictions in 2021 for child sex crimes. You were even undergoing treatment at the time, and that wasn't a deterrent either.

I think the nature of your collection, what you had in your possession, and the disturbing search terms that you had cataloged in a rather scrupulously-kept book, your composition book, add mightily to the concern, and that's true -- and at least from what I can tell, those don't strike me as beginner search terms.

Too often -- and this is a sad reality -- abuse begets abuse. One person's abuse causes abuse ultimately down the road by that same person who was abused. That's a sad tragedy, and you're no exception in that regard. You suffered a troubled life. Abuse from your father and from a stranger when you were a young boy that left you scarred with mental health needs.

In 1985, when you were 12 years old, your father's suicide eliminated the weekly physical abuse at his hands, but I think it also contributed to deeper mental health needs that you had.

Your mother remarried, remarried an Army man, and from what I can tell from the report that I've read, Mr. Frazier, he seemed to be an honorable man and showed you a different way until he passed in 2019. And it is at that time that this spiral of your sex offenses began. Though it seems, from what I read, that your conversion from adult pornography, legal pornography, to child sex abuse material seems to have occurred sometime sooner; though, we don't know precisely when.

Your psychosis, your mental health challenges, I think, have deeper roots, and a heavier sentence than the statutory minimum today I don't think will measurably add any deterrent for someone who experiences auditory, visual hallucinations, and wrestles daily, really, with many types of conditions. And I'm sympathetic to the conditions that you face on a daily basis.

You're a high school graduate. I think, likewise, you are competent. You and I have spent considerable time at this point together, and I've seen throughout the history of this case illustrations of your competence, and we've discussed that at various moments in the proceedings, the hearings that we've had together.

But there's no question in my mind about your competence in that regard. Just as a couple examples, as I think back on our time together, at the time of your potential change of plea, you displayed enough awareness to realize that you could not agree to certain facts that were proposed as part of your factual basis.

Even during our hearing together about whether this case would proceed to a jury or to the bench, though you seemed to see other individuals in the courtroom, you could seemingly differentiate between those who I see and those additional individuals that you see.

And throughout this proceeding -- and I mean this as

a compliment, Mr. Frazier -- you have always comported yourself politely, not just with your counsel but with the Court, and you've shown a certain awareness, I think, of what is transpiring in these proceedings.

That being said -- and those are just by way of examples -- your mental health conditions, I think, and your learning disabilities, I think, shape your decision-making in a way that's unique and really different than other offenders that this Court sees.

I think you understand right from wrong, certainly. And you persisted here despite treatment and supervision. And so the 10-year minimum sentence promotes deterrence and public protection through your incapacitation.

The great hope -- the great hope, Mr. Frazier -- is that more concerted treatment can be brought to bear to make your next opportunity at supervision unbeatable. I think before 2000 --

**MR. VANDERCOY:** Could I have a moment?

**THE COURT:** Certainly, sir.

(Pause in the proceedings while Attorney Vandercoy confers with the defendant.)

**MR. VANDERCOY:** Thank you.

**THE COURT:** Thank you.

Anything we need to discuss, Mr. Vandercoy?

**MR. VANDERCOY:** No, Your Honor.

**THE COURT:** Okay.

Mr. Frazier, as I was mentioning, the great hope, as I've described it, is that there can be treatment brought to bear to aid you with your mental health challenges, and then the next time you have the opportunity at being supervised by the Probation Office, that that process will be successful where the last time was not.

Before 2019, you had accumulated only two rather youthful misdemeanors, and so there's something to be said, as the lawyers have noted here today, of your ability to not just know what is good but to actually be good.

You've never touched or physically assaulted a victim, and so your slide over the years from legal pornography to illegal pornography hasn't taken on the more worrisome aspects of conduct that the Court sometimes sees with other offenders.

That being said, idle hands can be evil hands, and that can prove true once again on supervision because the unfortunate reality is you can't work because of your ongoing disability, and that has existed for some time, since about 2001.

And the reality is that someone who is willing to not work with law enforcement or evade law enforcement, especially those who are tasked with helping you along the way on supervision, I think that does make the need for concerted

supervision even greater, even as you age into your 60s.

In short, Mr. Frazier, I do think that review of all the 3553(a) factors persuades the Court that the sentence, as both sides have argued for, of 120 months is sufficient but not greater than necessary to satisfy federal sentencing goals, particularly given the mandate by statute.

Let's discuss your supervision. I must impose a term of supervised release of 5 years to life. I think a term of 7 years is appropriate. Your supervision will be governed by the recommended conditions for the reasons that are stated in that report, as well as stated by the Court today.

I really think supervision is where the rubber is going to meet the road for you, Mr. Frazier. You won't have the opportunity at all to acquire or to view child sex abuse material while you are incarcerated. Given what happened before, what happened so quickly before on your prior supervision, I do think that that is where, as I said, the rubber is going to meet the road. We're really going to see just how well you do as you are supervised.

And I do think that that 7-year term takes us to a moment in your life where the real risk of recidivism, the likelihood that you might reoffend, truly diminishes, and so I do believe that that's the appropriate term.

Let me talk about other things that the law calls assessments, Mr. Frazier. There are two, one under a law

called the Justice for Victims of Trafficking Act. I won't go into detail on that assessment because the reality is, based on your disability, your reliance on Social Security income, you are indigent for purposes of that assessment, so that should not be imposed.

The second is a discretionary assessment under a different law. It's called the Amy, Vicki, and Andy Child Pornography Victim Assistance Act of 2018. A long name, but the short of it is you don't have any income, and your disability means you don't have an earning capability that would support an imposition of that assessment, so I don't propose that assessment either.

Likewise, you can't pay the fines that are recommended by the guidelines, even if I gave you an installment schedule to pay that fine over time, so I'm not going to impose a fine today either.

But there is a special assessment of $100. I have to include that as part of the judgment today. That's required by law.

So the proposed sentence, Mr. Frazier, is 120 months as required by statute and, as both sides have argued for today, a 7-year term of supervised release to follow that term of imprisonment, a $100 special assessment, and no fine or other assessments.

Let me talk a little bit more about your supervised

release. I reviewed the conditions that were attached to the revised presentence report, Mr. Frazier. Those conditions are all appropriate in your case, and those conditions will govern how you must behave, how you must comply, conduct your life after you get out of prison. You can seek to have those conditions modified. You can seek to have those changed. And I, too, have the authority to change not only the term, the length of that supervision, but also the nature of those conditions that you must comply with during that 7-year stretch.

Any questions about your obligations or rights as it concerns supervised release, Mr. Frazier?

**THE DEFENDANT:** No, sir.

**THE COURT:** Any questions about the Court's proposed sentence today?

**THE DEFENDANT:** No, sir.

**THE COURT:** Counsel, have I addressed everyone's arguments, including any in mitigation?

Ms. Jones?

**MS. JONES:** Yes, Your Honor.

**THE COURT:** Mr. Vandercoy?

**MR. VANDERCOY:** Yes, Your Honor.

**THE COURT:** Mr. Frazier, one other thing to mention, and Mr. Vandercoy asked me to consider this as part of your sentence today. I will make a recommendation to the Bureau of

Prisons to consider an appropriate placement for you, particularly in light of the nature of this offense and the risk that that poses to you while incarcerated, as well as your mental health challenges and needs, particularly the need for treatment, but that in combination, so that they can consider where you should be best housed during this next stretch of your life, your prison term.

All right, sir?

**THE DEFENDANT:** Uh-huh.

**THE COURT:** Any questions about that?

**THE DEFENDANT:** No, sir.

**THE COURT:** Mr. Frazier, are you ready for the Court to pronounce sentence today?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** It is the Court's judgment that the defendant, Matthew J. Frazier, is hereby committed to the custody of the Bureau of Prisons, to be imprisoned for a total term of 120 months.

Under 18 U.S.C. §3585, the Court leaves it to the Bureau of Prisons to determine the appropriate amount of time that he has served to be credited toward his sentence. The Court recommends that the Bureau of Prisons designate, choose as the place of the defendant's confinement, consistent with his security classification as the Bureau of Prisons determines that, a facility where he may be safely housed from other

incarcerated individuals, given the nature of this offense and his particular mental health needs, and also where he may receive appropriate mental health treatment.

Upon release from prison, the defendant will be placed on supervised release for a term of 7 years. And while on supervised release, he must comply with the terms of supervision set forth in paragraphs 96 to 116 of the report, the revised presentence report, which are incorporated today as they are appropriate, and the Court has made an independent judgment that they should be imposed.

Mr. Vandercoy, let me confirm that the defendant waives reading of those supervisory conditions today.

**MR. VANDERCOY:** Yes, Your Honor.

**THE COURT:** The defendant does expressly waive reading of those supervisory conditions. The Court directs the probation officer to provide the defendant a written statement of all conditions.

The Court imposes no other fines or assessments except that he must pay to the United States a special assessment of $100, which is due immediately.

The Court will grant the motion to seal that was filed by Mr. Frazier, and the Court will likewise make the preliminary order of forfeiture finalized to the defendant, including that in the judgment, and then await the government's motion as to any third-party interest.

Mr. Frazier, I need to advise you of your appeal rights. You do have the right to appeal your conviction and sentence. Any notice of appeal must be filed within 14 days of the judgment that's entered in your case. Given the time of the day, that could happen today, or it may happen as late as tomorrow.

Those 14 days that you must -- in which you must file your notice of appeal, that includes both weekdays and weekends. So every day that passes counts toward that 14 days.

If you want to file an appeal and you can't afford the cost of an appeal, you can apply to appeal at no cost to you. Mr. Vandercoy is very experienced, and so he knows these obligations. But for your benefit, he has an obligation to file a notice of appeal, a timely one, if you wish to pursue one.

He also has an obligation to continue to represent you upon appeal unless he's relieved of that obligation by the Court of Appeals that sits in Chicago.

Do you understand those rights, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Any questions about those rights?

**THE DEFENDANT:** No, sir.

**THE COURT:** Okay. With the Court's thanks to counsel on all sides.

Anything else for the government today, Ms. Jones?

**MS. JONES:** No, Your Honor.

**THE COURT:** Mr. Vandercoy, likewise, with the Court's thanks to you. Any other matters to take up for Mr. Frazier?

**MR. VANDERCOY:** No, Your Honor.

**THE COURT:** Mr. Frazier, good luck to you, sir.

**THE DEFENDANT:** Thank you.

(Proceedings concluded at 2:09 p.m.)

\- - -

CERTIFICATE

I, MELODY M. GOODRICH, certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

Melody M. Goodrich

______________________________ DATE: January 22, 2025

MELODY M. GOODRICH
Federal Realtime Certified Reporter
United States District Court
Northern District of Indiana
South Bend Division

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br> **Plaintiff,** <br> **vs.** <br> **MATTHEW J FRAZIER** <br> **Defendant.** | **CASE NUMBER: 3:23CR01-001** <br> **USM Number: 47569-510** <br> **DAVID E VANDERCOY - FCD** <br> **DEFENDANT'S ATTORNEY** |

**JUDGMENT IN A CRIMINAL CASE**

**THE DEFENDANT** was found guilty on count 1s of the Superseding Indictment after a plea of not guilty on September 4, 2024.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18:2252A(a)(5)(B) and (b)(2) POSSESSION OF CHILD PORNOGRAPHY AND FORFEITURE | September 16, 2022 | 1s |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

December 12, 2024
Date of Imposition of Judgment

s/ Damon R. Leichty
Signature of Judge

Damon R. Leichty, United States District Judge
Name and Title of Judge

December 12, 2024
Date

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **120 months.**

The Court makes the following recommendations to the Bureau of Prisons:

The court recommends that the Bureau of Prisons designate as the place of the defendant's confinement, consistent with his security classification as determined by the Bureau of Prisons, a facility where he may receive appropriate mental health treatment and where he may be safely housed from other incarcerated individuals, given the nature of this offense and his particular mental health needs.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

Defendant delivered ____________________ to ______________ at ______________, with a certified copy of this judgment.

______________________________
UNITED STATES MARSHAL

By: ______________________________
DEPUTY UNITED STATES MARSHAL

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **7 years** subject to the following conditions:

## CONDITIONS OF SUPERVISION

1. You must not commit another federal, state, or local crime.

2. You must not unlawfully possess a controlled substance.

3. You must not unlawfully use any controlled substance, including marijuana, and must submit to one drug test within 15 days of the beginning of supervision and at least 2 periodic tests after that for use of a controlled substance.

4. You must cooperate with the probation officer with respect to the collection of DNA.

5. You must be lawfully employed full-time (at least 30 hours per week). If you are not employed full-time, you must try to find full-time employment under the supervision of the probation officer. If you become unemployed, or change your employer, position, or location of employment, you must tell the probation officer within 72 hours of the change. If after 90 days you do not find employment, you must complete at least 10 hours of community service per week until employed or participate in a job skills training program approved and directed by your probation officer.

6. You must report in person to the probation office, in the district which you are released, within 72 hours of release from the custody of the Bureau of Prisons. You must report to the probation officer in the manner and as frequently as the court or the probation officer directs; and you must notify the probation officer within 48 hours of any change in residence, and within 72 hours of being arrested or questioned by a police officer.

7. You must not travel knowingly outside the federal judicial district without the permission of the court. Alternatively, the probation officer will grant such permission when doing so will reasonably assure the probation officer's knowledge of your whereabouts and that travel will not hinder your rehabilitation or present a public safety risk.

8. You must truthfully answer any inquiry by the probation officer and must follow the instruction of the probation officer pertaining to your supervision and conditions of supervision. This condition does not prevent you from invoking the Fifth Amendment privilege against self-incrimination.

9. You must permit a probation officer to meet at your home or any other reasonable location and must permit confiscation of any contraband the probation officer observes in plain view. The probation officer will not conduct such a visit between the hours of 11:00 p.m. and 7:00 a.m. without specific reason to believe a visit during those hours would reveal information or contraband that wouldn't be revealed through a visit during regular hours.

10. You must not meet, communicate, or otherwise interact with persons whom you know to be engaged or planning to be engaged in criminal activity.

11. You must not possess a firearm, ammunition, destructive device, or any other dangerous weapon (meaning an instrument designed to be used as a weapon and capable of causing death or serious bodily harm).

12. You must not enter into any agreement to act as an informant or special agent of a law enforcement agency without the court's permission.

13. You must not incur new credit charges or open additional lines of credit or other financial accounts without supervision of the probation officer.

14. You must provide the probation officer any requested financial information, including copies of state and federal tax returns.

15. Unless an assessment at the time of release from imprisonment or commencement of probation indicates to the court that participation is unnecessary, you must participate in a substance abuse and mental health treatment programs or aftercare program. The court will receive notification of such assessment. You must abide by all treatment program requirements and restrictions, consistent with the conditions of the treatment provider. You will be required to participate in drug and /or alcohol testing, not to exceed 85 drug and/or alcohol tests per year. At the request of a treatment provider, probation officer, or you, the court may revise these conditions. While under supervision, you must not consume alcoholic beverages. You must pay all or a part of the costs for participation in the program, not to exceed the sliding fee scale as established by the Department of Health and Human Services and adopted by this court. Failure to pay these costs will not be grounds for revocation unless the failure is willful.

16. You must not consume alcohol and must submit to random blood-alcohol or breathalyzer testing, at your own expense, through participation in a co-payment program administered by the probation office, as approved and directed by your probation officer. Failure to pay these fees will not be grounds for imprisonment unless the failure is willful.

17. You must register with local law enforcement agencies and the state attorney general, as identified by the probation officer. Defendant's offense of conviction is a child sex offense, and the defendant is required to register pursuant to the Sex Offender Registration and Notification Act.

18. You must participate in sex offender testing and evaluations to include psychological, behavioral assessments and/or polygraph examinations. You must enter and attend sex offender specific group and individual counseling at an approved outpatient treatment program, if warranted from the testing, evaluation and assessments, and must abide by all program requirements and restrictions. You must pay all or part of the costs for participation in the program not to exceed the sliding fee scale as established by the Department of Health and Human Services and adopted by this court. Failure to pay for these services will not be grounds for revocation unless the failure is willful.

19. You may not have access to any personal devices capable of connecting to the internet, unless registered in advance with and monitored by the probation officer. The probation officer will have access to all of your electronic devices with internet access, at any time, with or without notice, to enable verification of compliance with this condition.

20. You must allow the probation officer, or designee, to install computer monitoring software on any computer (as defined in 18 U.S.C. 1030(e)(1)) and cell phone that you use. The probation

department, or their designees, may monitor all aspects of your computer or cell phone activity, except for the Geolocation data. Moreover, cell phone voice conversation monitoring is limited to data collection as opposed to listening in or recording voice conversations. Before installation, you may be subjected to a search of your computers and cell phones to identify the existence of illegal data. To ensure compliance with the monitoring condition, you must allow the probation officers, or their designees, to conduct periodic, unannounced, monitoring of any computers and cell phones subject to this condition. Such monitoring will be conducted to determine whether the computers and cell phones contain any prohibited data; whether the monitoring software is functioning effectively; whether there have been attempts to circumvent the monitoring software; and to ensure compliance with supervision conditions and, if applicable, to ensure compliance with any sex offender treatment conditions or rules. You must warn others who use your computers and cell phones subject to this condition that these devices are monitored. You must pay the cost of the monitoring software and installation, if financially able to do so, at the monthly contractual rate. Failure to pay according to this condition will not be grounds for imprisonment unless the failure is willful.

21. You must not contact any victim or any member of a victim's family by any means, either directly or indirectly through others. You must not provide information about any victim or a victim's family member, including his or her name, address, telephone number, or any other contact information, to others.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $100.00 | NONE | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 102 Robert A. Grant Courthouse, 204 South Main Street, South Bend, IN 46601. The special assessment payment shall be due immediately.

## FINE

No fine imposed.

## RESTITUTION

No restitution imposed.

## FORFEITURE

The defendant shall forfeit the defendant's interest in the following property to the United States:

- **An Apple iPad (6th Generation), Model: A1954, Serial No. GG7WV4Q9JMXJ.**

Name: MATTHEW J FRAZIER
Docket No.:3:23CR01-001

**ACKNOWLEDGMENT OF SUPERVISION CONDITIONS**

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein. These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

______________________________ _______________
Defendant Date

______________________________ _______________
U.S. Probation Officer/Designated Witness Date